### PEARSON *v.* HUMPHREYS.

### Opinion delivered March 29, 1926.

EVIDENCE—BURDEN OF PROOF.—Decedent's widow alleged that she had advanced $300 to defendants in consideration that they would discharge a note of decedent for that sum and would probate a claim against her husband's estate for that sum and assign such claim to her, and that defendants had failed to probate and assign the claim; defendants admitted the alleged agreement, but alleged that they had complied with it. *Held* that the burden was on defendants to prove such compliance.

Appeal from White Circuit Court; *E. D. Robertson,* Judge; reversed.

*John D. DeBois,* for appellant.

*John E. Miller* and *Cul L. Pearce,* for appellee.

SMITH, J. Appellant brought suit against appellees to recover the sum of $300, which she alleged she had loaned them. Her testimony supporting the allegations of her complaint was to the effect that she had loaned appellees $300 upon their promise to repay, which they had refused to do upon demand, wherefore she sued.

Appellees alleged in their answer that they had, for accommodation, signed the note of F. W. Pearson, who was appellant's husband, to the order of B. O. Ward for $300; that Pearson had died, and W. S. Coffman had been appointed administrator of his estate. They admitted receiving the $300, but denied that it was a loan, and alleged in the answer that the facts in regard to the transaction were as follows: That the plaintiff at the time agreed to pay said note, if these defendants would induce the holder to forego payment of interest, and if they would also file a claim against the estate of her deceased husband for said sum, and assign said claim to her, so she would be reimbursed out of the proceeds of her husband's estate; and that these defendants took her personal check for $300 upon said conditions, delivered it to the holder of said note, taking the note as a receipt for said sum, and filing it with the administrator in the manner provided by law, and thereupon assigned their interest in said note and claim to plaintiff.

Appellee Williams testified that he received the $300 from appellant and paid Ward the note, which at that time amounted with the interest thereon to the sum of $332.50. At the time the note was paid, Ward made the following indorsement on the back of the note: "Aug. 1, 1922. Received payment on the above date by Ernest Williams and Thomas Humphrey. (Signed) B. O. Ward."

Appellees then made the following additional indorsement on the note: "Bradford, Ark., Aug. 4, 1922. Estate of F. W. Pearson, Dr. Ernest Williams and Thomas Humphreys. Amount paid as securities on this note, $332.50." This indorsement was signed by both appellees. Attached to the note thus indorsed was an

affidavit signed by both appellees that the above account was true, correct, and unpaid.

Appellee Williams, who appears to have acted for himself and his co-appellee Humphreys, testified that, pursuant to his agreement with appellant, he filed the note with the administrator of Pearson's estate. He did not know what action the administrator had taken after delivering the note to the administrator for allowance, and did not know whether it had ever been assigned, although he testified that he told appellant he would have it assigned, probated and allowed.

The court gave, at the request of appellant, an instruction telling the jury to find for appellant if they found the fact to be that she had loaned the money to appellees. The verdict returned was in appellee's favor, so the jury must have found that the transaction was not a loan.

Appellant sought also to have the jury pass upon the question whether appellees had complied with the agreement whereby they received the money if it were not a loan, and upon this phase of the case requested instructions to the effect that, if appellant let the appellees have the $300 with the understanding that they would pay the note with this money and assign their interest in the note to appellant, and would probate the note after thus paying it, but failed to probate or assign their interest therein to appellant, to find for the plaintiff.

The court refused to give any of the instructions requested by appellant on this issue, but did give the following instruction on the subject: "Number 1. You are instructed that, if you find that the plaintiff agreed to pay the note that had been executed by her husband, and signed by the defendants as sureties in consideration of the waiver of the interest on the note and the agreement on the part of the defendants that they would file a claim against the estate of her husband, that the claim was to belong to her, and that this was done, then, under the law, you should return a verdict for the defendants."

This instruction did not require the jury to find, before returning a verdict for appellees, all that their answer alleged they agreed to do. The answer alleged an agreement to assign the note to appellant, and to file the assigned claim with the administrator for allowance, and to have it probated. No attempt was made to show that the claim was assigned to appellant. Williams testified that he supposed appellant knew the claim had been filed for allowance, as that was the agreement, but he did not testify that he had told appellant he had done so. He also admitted that he did not know whether the administrator knew anything about the agreement he had with appellant.

The clerk of the probate court was called as a witness, and testified that the administrator had made his final settlement, and had been discharged, and that the note in question was found among the papers of the estate which the administrator filed with his final settlement, but the note had never been allowed or rejected as a claim against the estate, either by the court or by the administrator.

Appellant testified that she knew nothing about the filing of the note with the administrator, and had no agreement that this should be done. There was no evidence whatever that appellant was in any manner previously liable on this note, and the evidence is undisputed that the $300 advanced by her was her individual money.

Over the objection of appellant, the jury was instructed that the burden of proof was on appellant. The statute provides that the burden of proof in the whole action lies on the party who would be defeated if no evidence were given on either side (§ 4113, C. & M. Digest), and we are of the opinion that the court was in error in telling the jury that the burden of proof rested upon appellant.

Under the pleadings in the case we think appellant would have been entitled to a judgment under the admissions of the answer if no testimony had been offered by appellees to support their allegations of compliance with

the agreement under which the money was received. It is undisputed, in fact admitted, that appellees received the money, and it is not contended that it was a gift. Appellees were liable as joint makers of the note to Ward. Appellant was not liable in any manner. Appellees admit receiving the money under an express agreement on their part to pay the note, for which they were liable as accommodation makers, and to assign and probate it, and the agreement to assign and probate was in the nature of a plea of payment. When appellees received this money, they assumed a legal obligation in regard to it, and the burden was upon them to show a performance of the agreement in consideration of which they received the money. As we have said, the jury has found that the transaction was not a loan, but that finding is not decisive of appellees' liability. The question remains, under the issues joined, what obligation did appellees assume in consideration of the payment to them of the $300, and have they discharged the agreement whereby appellant let them have the money?

Having admitted the receipt of the money, the court should have submitted to the jury the questions: (a) What was the agreement whereby appellees were paid this money? (b) Have appellees performed their agreement? Having alleged that the transaction was not what it appeared to be, to-wit, a loan, under an implied, if not express, promise to repay, the burden was upon appellees to show what the transaction was if it were not a loan, and whether they have performed the undertaking on their part which induced appellant to let them have the money.

The judgment of the court below will therefore be reversed, and the cause remanded with directions to submit these issues to the jury.

McCULLOCH, C.J., (dissenting). Appellant sought to recover on the sole ground that appellees had borrowed $300 from her and failed to repay the same. Appellees denied that they had borrowed the money from appellant. This was the only issue involved in the trial,

and it was submitted to the jury in appropriate instructions.

In instruction No. 1, given at the instance of appellant, the court told the jury that if the plaintiff "did lend to defendant $300 to apply in payment of a note they owed one B. O. Ward for an indefinite time, and she has demanded payment therefor, before starting this suit, and the same is not paid, you will find for plaintiff for her debt and interest." It is true that appellees, after denying that they had borrowed the money of appellant, went further and stated that it was advanced to them by appellant merely for the purpose of use in payment of the Ward note, and that they were to assign the claim to appellant and probate it against the estate of appellant's husband, but those allegations were not essential part of the defense, the question at issue being whether or not appellees borrowed the money. It being admitted that the sum of money named was in fact turned over to appellees, the substance of the agreement was the turning point of the question of the liability of appellees for the payment of the money. The real issue was whether or not the money had been borrowed from appellant by appellees, for that was the only theory upon which appellant sought to recover, and upon no other theory was appellant entitled to recover in the present action. She did not sue upon any allegations of loss or damages by reason of the breach of the agreement to probate the claim against her husband's estate and to assign the claim to her. Indeed, the assertion of such a right of action would have been inconsistent with the right of action actually asserted in the complaint to recover for borrowed money. If appellant had sued for breach of the contract to assign the claim, then other elements might have entered into the defense.

My conclusion is that the court correctly submitted the only issue in the case to the jury, and that there was no error in refusing other instructions requested by appellees.

I am also of the opinion that the majority have reached the wrong conclusion in regard to the burden of proof. The issues in the case being whether or not appellees borrowed the money, the burden of proof rested upon the appellant to prove her case by showing that she lent the money to appellees. It was not a part of appellees' defense to show what became of the money or whether or not they performed a collateral agreement with reference to the disposition of it. All that appellees had to do was to meet the issue as to the money being borrowed, and the burden of proof on that issue did not rest upon them. No affirmative defense being pleaded, the burden of proof never devolved on appellees.

Mr. Justice HART concurs in the views herein expressed.