THE DOMIRA.
THE IRLAND.

THE PINAR DEL RIO.
Nos. 10801, 10922.

District Court, E. D. New York.
Feb. 21, 1931.

Kirlin, Campbell, Hickox, Keating & Mc-Grann, of New York City (Robert S. Erskine and Henry P. Elliott, both of New York City, of counsel), for the Domira.

Bigham, Englar, Jones & Houston, of New York City (T. Catesby Jones and James W. Ryan, both of New York City, of counsel), for Niles-Bement-Pond Co. and others.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark and P. Fearson Shortridge, both of New York City, of counsel), for the Irland.

Lord, Day & Lord, of New York City (Allan B. A. Bradley and James S. Hemingway, both of New York City, of counsel), for the Pinar Del Rio.

CAMPBELL, District Judge.

These are cross-suits to recover damages alleged to have been caused by a collision between the motor vessel Irland and the steamship Domira, in a fog, in which both vessels and the cargo of the Domira were damaged.

I find the facts as follows:

At all the times hereinafter mentioned and at the time of the trial herein A/D Det Dansk Franske Dampskibselskab was a Danish corporation and the owner of the motorship Irland.

At all the times hereinafter mentioned and at the time of the trial herein a British subject was the owner of the steamship 'Domira.

At all the times hereinafter mentioned and at the time of the trial herein Santa Clara Steamship Company was a British corporation and the owner of the steamship Pinar Del Rio.

Niles-Bement-Pond Company and the other persons and corporations mentioned in the intervening petition were, at all the times hereinafter mentioned and at the time of the trial herein, the owners of the cargo of the steamship Domira; that those alleged to be corporations were corporations as alleged, and that the petitioners not incorporated have a legal status as alleged.

During the currency of process herein, the motorship Irland, the steamship Domira, and the steamship Pinar Del Rio have been within the Eastern district of New York and the jurisdiction of this court.

The partly loaded motor vessel Irland, gross tonnage 3,175, net tonnage 1,928, length 326.2 feet, width 50.1 feet, depth 20.8 feet, arrived from Boston on the morning of December 31, 1927, and anchored off Ambrose Light Vessel, where the weather was hazy.

At 10:27 o'clock a. m. the weather had cleared, and the Irland got under way again and moved up toward the entrance of Ambrose Channel.

About 10:45 o'clock a. m. the Irland's engines were stopped and the pilot boat sighted.

About 11 o'clock a. m. Sandy Hook pilot Smith boarded the Irland.

At that time the weather was clear, wind south, tide flood, and the Irland entered the Ambrose Channel and proceeded up on her starboard side. She passed buoy 8–A close aboard to starboard.

The fog shut in thick, visibility was reduced to 600 feet, and fog signals were being sounded by the Irland at regular intervals of one-half minute.

The Irland proceeded at various speeds until she was in the vicinity of buoy 10, when

a fog signal was heard from a steamship ahead, which proved to be the Steel Inventor, and at 11:46 o'clock a. m. the Irland stopped her engines.

At 11:47 o'clock a. m. the Irland's engines were put slow ahead again, and she rounded buoy 10 under a port helm on her starboard hand about 200 feet off. The Irland then proceeded up the channel. and rounded buoy 14 under a port helm on her starboard hand about 200 feet off, and started on a course north magnetic at slow speed.

The set of the tide was to the Irland's port, and the Irland was put on the course north instead of the usual channel course from buoy 14 of north ¼ west to compensate for any tidal set to port.

The steamship Pinar Del Rio, gross tonnage 3,066, net tonnage 1,830, length 321.1 feet, breadth 46.7 feet, depth 23.2 feet, which was outward bound, had been at anchor at the northern entrance to the channel to the eastward of buoy 18 for over 24 hours, on account of the dense fog.

She got under way just before noon on December 31, 1927, proceeded across the channel, and steadied until she had buoy 17, close to which she passed, on her starboard hand about 100 feet off.

The pilot and master of the Pinar Del Rio had thought it was going to clear when she got under way, but it shut down quite thick when she passed buoy 17, and the visibility was exceedingly short.

After passing buoy 17, the Pinar Del Rio headed down the channel on what was intended to be the channel course at slow speed, but passed buoy 15 slightly to the westward on her port hand, about 15 or 20 feet off, passing between buoy 15 and the spar marking buoy.

After the stern of the Pinar Del Rio cleared the buoy, she headed around southeast to get further out in the channel, and proceeded diagonally across the channel at slow speed.

At 7:30 o'clock p. m. on December 30, 1927, the steamship Domira, gross tonnage 3,852, net tonnage 2,412, length 352.3 feet, breadth 50.0 feet, depth 24.7 feet, left the pier at Twentieth street, East River, loaded with cargo outward bound.

The fog became very thick, and at 7:45 o'clock p. m. she anchored just above the pier.

About 10:15 o'clock p. m. she again got under way and proceeded down to the an-

chorage at the upper end of the Statue of Liberty and anchored there about midnight.

At about 9:30 o'clock a. m. on December 31, 1927, the Domira again got under way and proceeded down to Gravesend Bay, where she anchored.

At 11:47 o'clock a. m. the Domira time (as were the times of her movements formerly enumerated), the weather was clear, visibility 1½ miles, the Domira again got under way and proceeded to pass Craven Shoal to starboard and then down the channel, passing buoy 17 to starboard; the visibility was then 600 feet.

The course of the Domira is not definitely established, but she was on her starboard the west side of the channel.

The several vessels mentioned then proceeded as follows:

The Irland proceeded at slow speed on course north magnetic, sounding regulation fog signals, and a fog signal was heard from a vessel ahead, which later proved to be the Pinar Del Rio. The engines of the Irland were stopped immediately, and she ported her helm.

Shortly afterward the Pinar Del Rio was sighted ahead, on about the course she had been put on after rounding buoy 15, crossing the channel diagonally from the Irland's port to her starboard side.

A two-blast passing signal was blown by the Pinar Del Rio to the Irland, which was answered by the Irland with a two-blast signal, and she starboarded her helm so as to pass starboard to starboard as agreed by said signals.

The Domira then appeared out of the fog, moving faster and somewhat to the south of the Pinar Del Rio, which she was following close astern, but with the Domira on the Pinar Del Rio's starboard quarter crossing the channel diagonally from the westerly to the easterly side.

The Domira was not on the same course as when she passed buoy 17, but was following and overtaking the Pinar Del Rio on what appeared to be nearly a parallel course, but on the Pinar Del Rio's starboard side.

The danger of collision was obvious, and the Irland immediately put her engines full speed astern, sounded three blasts of her whistle, and let go both anchors.

The Domira was coming on with greater speed than either the Pinar Del Rio or the Irland, and when she sighted the Irland she stopped, put her engines astern, sounded

three blasts, and after the pilot on the Pinar Del Rio had sung out to the Domira to let go her anchor, she did let go her port anchor.

The Domira's way was not stopped, and she came on across the bow of the Irland, the starboard side of the Domira coming into contact with and twisting the stem of the Irland to starboard, at 12:12 o'clock p. m. Irland's time.

Both the Irland and Domira and the cargo of the Domira suffered damage.

The place of collision was on the Irland's starboard side, the east side of the channel.

The Pinar Del Rio had swung to starboard and was passing the Irland starboard to starboard about 100 feet off at the time of the collision.

The tide was flood, and the Irland backed for one and one-half minutes, dragging her anchors somewhat to the west, and with her anchors down the effect of the flood tide and backing was to swing the Irland around, changing her heading.

Her anchors were on 20 to 30 fathoms of chain, and when she was heading east southeast buoy 15 was by estimate 500 to 600 feet astern.

There is no evidence showing that the Domira was sounding fog signals, and no fog signals from the Domira were heard by the Pinar Del Rio or the Irland.

The pilot, master, and third officer of the Irland were on the bridge, and the helmsman at the wheel in the pilot house, and the first officer and lookout were forward, and the lookout was efficient.

The pilot of the Domira testified that the master of the Domira was on the bridge with him, and that the chief officer and lookout were forward, but none of them were called as witnesses, nor were their depositions taken.

The Pinar Del Rio did not interfere with the navigation of either the Irland or the Domira.

From the facts as found, the fault of the Domira is clearly established.

No claim has been made on behalf of the Irland that the Pinar Del Rio was at fault; on the contrary the proctors for the Irland took by deposition the testimony of the master and second officer of the Pinar Del Rio, before the Pinar Del Rio was made a party to either of these actions; therefore the testimony of the second officer is inadmissible against the Pinar Del Rio, and the objection of the advocate of the Pinar Del Rio to its reception as binding on the Pinar Del Rio is sustained.

The testimony of the master of the Pinar Del Rio is admissible as against the Pinar Del Rio, notwithstanding the fact that she was not a party at the time the deposition was taken. The position he occupied made his statement admissible against the vessel and owner, and the objection of the advocate of the Pinar Del Rio to its reception is overruled.

All of the depositions taken on behalf of the Irland were taken before any claim had been made against the Pinar Del Rio, and before she had been made a party to either action, and of course no notice was given to the Pinar Del Rio of the taking of such depositions and she had no opportunity for cross-examination. Such depositions are not admissible against her, therefore the objection of the advocate to the reception of such depositions as against the Pinar Del Rio or her owners is sustained.

The hypothetical questions asked of the expert Robinson, called on behalf of the Domira, were all in some considerable degree based upon the testimony of the officers and crew of the Irland taken by deposition, the objection to the admission of which as against the Pinar Del Rio I have sustained; therefore the objection on behalf of the Pinar Del Rio to the reception in evidence as against the Pinar Del Rio of the said hypothetical questions, and Exhibits 3 and 4, are sustained, and the motion on behalf of the Pinar Del Rio to strike out the answers to such questions, and Exhibits 3 and 4, as against the Pinar Del Rio, is granted.

While we are considering the questions with reference to the Pinar Del Rio, it may be as well to dispose of the question of her liability, if any.

As I have hereinbefore said, the Irland has never claimed that the Pinar Del Rio was at fault, and the sole fact witness produced on behalf of the Domira and her cargo, the Sandy Hook pilot in charge of her navigation, testified on the trial of these actions that the Pinar Del Rio did nothing to interfere with him, and that he had no fault to find with her at all.

Both of these statements are supported by the evidence, and it seems clear to me that the Pinar Del Rio is without fault.

The rule laid down in The Pennsylvania, 19 Wall. 125, 22 L. Ed. 148, invoked by the advocate for the cargo owners, does not apply. But, even if it did, the Pinar Del Rio

might rebut the presumption by showing beyond fair doubt that the alleged violation did not contribute to the collision, and she has shown by the evidence, beyond fair doubt, that no act of hers contributed to the collision.

■ On the trial of the two above-entitled actions, what seems to me to be a novel experiment was attempted. No logs of the Domira were presented, and neither her master nor any officer or member of her crew was called as a witness nor their depositions offered.

The only fact witness as to the navigation of the Domira who was called was the Sandy Hook pilot who was navigating that vessel.

In addition, however, and apparently as a substitute for the missing witnesses, there was called as an expert witness a gentleman whose qualifications are beyond question, but who in response to hypothetical questions gave answers which, if allowable, left nothing for this court to decide.

This goes far beyond the province of an expert, and is in fact usurping the province of the court, and cannot be allowed. Castner Electrolytic Alkali Co. v. Davies (C. C. A.) 154 F. 938; United States v. George A. Fuller Co., Inc. (D. C.) 300 F. 206; Hunt v. Kile (C. C. A.) 98 F. 49.

■ In addition to this, the expert based his conclusions upon facts not in evidence, and in my opinion upon inferences that cannot be properly drawn from the facts proven.

The objections to the hypothetical questions asked by Mr. Jones of the expert witness Robinson, and by Mr. Erskine of the expert witness Robinson, are sustained, and the motions to strike out the answers to such questions are granted, on the ground that the questions ask for and the answers give opinions of the expert that go far beyond the province of an expert, and in fact usurp the province of the court, and upon the further ground that the expert based his conclusions upon facts not in evidence, and in my opinion upon inferences that cannot be properly drawn from the facts proven. The objections to Exhibits 3 and 4 are sustained, and the motions to strike out the said exhibits are granted upon the same grounds.

■ It is quite true, as the advocate for the Domira contends, that no presumption arises against the Domira for the nonproduction of her logs, as there was no showing that their production had ever been demanded.

■ I do not think the rule is quite so plain, however, with reference to her failure to present any of her officers or crew, but I have not found it necessary in the decision of these cases to consider that question, and therefore it is unnecessary to pass upon it.

I do hold, however, that the Domira must be held to her pilot's testimony, and cannot be aided by any presumption that any of the officers or crew did any particular act.

The uncertainty as to the Domira's version of the accident is somewhat confusing, inasmuch as there were four of them, viz. that of the original libel, that of the amended libel, that of her pilot, and that of her advocate on the trial, which it was attempted to support by the rejected testimony of the expert.

Whatever version be considered, the fact remains that the collision did not occur as contended in any one of those versions.

As in all collision cases, the most important question here is, Where did the collision occur? And it seems certain to me that it occurred on the easterly side of the center of the channel, and this is supported by the position of the Irland at her anchors when she swung around with the tide after the collision.

The Pinar Del Rio was crossing the channel diagonally on a southeasterly course, and crossed the bow of the Irland. The exact point was not fixed, but the Pinar Del Rio was not just entering the channel after passing buoy 15 to port, but had been on that course for some time.

The compass course which the Domira was on was not shown by any positive evidence, but it certainly was not the channel course, because, if it had been and the Pinar Del Rio was crossing her bow, the Domira would have been headed toward some part of the port side of the Pinar Del Rio; and, if the Pinar Del Rio had crossed her bow, the Domira would have gone under the stern of the Pinar Del Rio and have been on a course parallel or nearly so with that of the Irland, but in the opposite direction, and probably 1,000 feet distant.

Instead of this, however, we have the Pinar Del Rio on a diagonal course southeasterly across the channel with the Domira, which had evidently swung under the stern of the Pinar Del Rio, on a course nearly parallel with the Pinar Del Rio and a little to the southerly thereof, with the bow of the Domira on the starboard quarter of the Pinar Del Rio.

When the change of course of the Domira may have started I do not know, but the Domira, instead of proceeding down on her starboard side of the channel was undoubtedly, just prior to the collision, following the Pinar Del Rio, and, by reason of her more southerly position, was unable to safely cross the bow of the Irland as the Pinar Del Rio had done.

Many nice calculations are presented as to elapsed time and speed and distance, but all of these are at best but estimates; but the fact that the Pinar Del Rio was crossing the channel diagonally cannot be questioned, and if, as I have found, the Domira was following the Pinar Del Rio, then the Domira was also crossing the channel.

It seems to me to have been impossible for the collision to have occurred as it did at an angle of 45° between the starboard sides of the Domira and the Irland, if the Domira was following the channel course on her starboard side of the channel, as in that event the Irland would have had to come from the western side, if not from outside the western limits of the channel, and be crossing the channel diagonally in a northeasterly direction, and there is no evidence on which any such contention may be based, although perhaps it might be worked out by making assumptions not warranted by the evidence.

The cause of the collision was the error of the Domira in following the Pinar Del Rio across the channel, instead of proceeding down the channel on her starboard side.

The Domira was moving at a much higher rate of speed than the Pinar Del Rio, and this is clearly shown, as she was overtaking her, and was on the starboard quarter of the Pinar Del Rio while the Irland was stopped.

No accurate proof was offered as to the engine movements of the Domira, and, as to the attempted statement by the pilot from memory of notes given him by one of the Domira's officers as to her engine movements, nothing further need be said than that it is to me entirely unconvincing.

There is no evidence that the Domira was sounding regulation fog signals, and neither the Pinar Del Rio nor the Irland heard fog signals from the Domira, and I am therefore of the opinion that she was not sounding them.

Notwithstanding the fact that the pilot of the Domira says he stopped her engines when the fog signal was heard by him apparently forward of the Domira's beam, I am not convinced that he is correct, but, if

he is, then from the evidence with reference to the relative positions of the Domira and the Pinar Del Rio before the collision, when the Domira let her port anchor go, the Domira was certainly proceeding at an immoderate rate of speed in a fog, with such short visibility.

It is difficult to understand how the Domira could get herself in the position she was in, if the pilot, helmsman, and lookout were attentive to their duties.

With both the Pinar Del Rio and the Irland sounding fog signals, they should have been reported, and the Domira should have much earlier reduced her speed. The pilot should have seen that the Domira was kept on the channel course, and, if that was the order of the pilot, the helmsman should have kept the Domira on that course.

The Domira was at fault for a violation of the narrow channel rule in not keeping on her own side of the channel, and for crossing the channel in a fog, for failing to sound regulation fog signals, and for proceeding in a fog at immoderate speed, in violation of article 16 of the Pilot Rules; and I believe that, under the meager testimony that is presented as to the lookout, there is a doubt as to that duty having been properly performed on the Domira, and that doubt should be resolved against her. The Ariadne, 13 Wall. 475, 20 L. Ed. 542.

The Irland was on her own side of the channel and must have been with a course north magnetic and passing close to all red buoys, as the evidence shows.

She was sounding regulation fog signals, and these were heard by both the Pinar Del Rio and the Domira.

The Irland sounded her two-blast signal to the Pinar Del Rio, after and not before the vessels came in sight of each other.

There has been much discussion of the speed of the Irland before she passed buoy 10, but that is immaterial as it is her speed above buoy 10 which counts. She passed buoy 10 at 11:46 o'clock a. m. and the collision occurred at 12:12 o'clock p. m., elapsed time between 25 and 26 minutes, and the distance about 1⅛ miles, average less than three knots. This was a proper speed in a fog. The Umbria, 166 U. S. 404, 412, 17 S. Ct. 610, 41 L. Ed. 1053; The Martello, 153 U. S. 64, 14 S. Ct. 723, 38 L. Ed. 637; The Colorado, 91 U. S. 692, 702, 23 L. Ed. 379.

The Irland maintained a good lookout and stopped her engines as required by the

second paragraph of article 16 of the Inland Rules of Navigation, immediately upon first hearing the fog signal of the Pinar Del Rio.

No fog signal was heard from the Domira, and therefore the engines could not be stopped because of a signal from her; but the fact is that the Irland did not start her engines ahead after they were stopped for the Pinar Del Rio, and therefore the Irland's engines were stopped when the Domira came in sight, and, appreciating the danger of a collision, the Irland reversed her engines and let go both her anchors.

In all instances I have given greater weight to the testimony of those on the vessel as to what that vessel did than to the opinion of those on other vessels, except where, from all the facts, it seemed clear to me that the witness on the vessel was in error.

▮▮ The faults of the Domira were clearly established, and are ample to account for the collision, and she cannot relieve herself in whole or in part by raising a doubt with regard to the management of the Irland, and there is no reason why this court should be astute to find fault on the part of the Irland. The City of New York, 147 U. S. 72, 13 S. Ct. 211, 37 L. Ed. 84; Steffens v. United States (C. C. A.) 32 F.(2d) 206; The Livingstone (C. C. A.) 113 F. 879.

I find as conclusions of law:

The steamship Domira is solely at fault for negligently coming into contact with the motorship Irland and damaging the Irland and the cargo on board the Domira, and in not keeping on her own starboard side of the channel, for failing to sound regulation fog signals, for proceeding in a fog at immoderate speed, and in failing to maintain a proper and efficient lookout.

The motorship Irland is without fault.

The cargo on the steamship Domira is without fault.

The steamship Pinar Del Rio is without fault.

Cross-libelant A/D Det Dansk Franske Dampskibselskab, owner of the motor vessel Irland, is entitled to recover its damages, interest, and costs against the steamship Domira.

The intervening petitioners Niles-Bement-Pond Company are not entitled to any recovery against the Irland or the Pinar Del Rio.

The steamship Pinar Del Rio is entitled to a dismissal of the libel as against it in the first above entitled action, with costs against the libelant in that action.

The motorship Irland is entitled to a dismissal of the libel as against it in the first above entitled action, with costs against the libelant in that action.

A decree may be entered in the first above entitled action in favor of the motorship Irland dismissing the petition of the intervening petitioners, and the libel as to it, with costs against the libelant Thomas Finnie, master of the steamship Domira, and in favor of the steamship Pinar Del Rio dismissing the petition of the intervening petitioners, and the libel as to it, with costs against the libelant Thomas Finnie, master of the steamship Domira.

A decree may be entered in the second above entitled action in favor of the libelant A/D Det Dansk Franske Dampskibselskab against the steamship Domira, with costs and the usual order of reference.

Settle on notice.

If this opinion is not considered a sufficient compliance with rule 46½ of the Rules in Admiralty, findings of fact and conclusions of law in accordance herewith may be submitted.