KIDD *v.* HORRY and others.[2]

*(Circuit Court, E. D. Pennsylvania.* October 9, 1886.)

COURTS—UNITED STATES COURTS—JURISDICTION—LIBEL—INJUNCTION.
    The United States courts have no jurisdiction to interfere, by injunction, to restrain the publication of a libel.

In Equity. An ancillary bill and motion for preliminary injunction.
*Walter George Smith, Francis Rawle,* and *A. R. Keasby,* for complainant.
*E. C. Rhoads* and *F. Carroll Brewster,* for defendants.
Before BRADLEY, Justice, and MCKENNAN, J.

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.
[2] Reported by C. B. Taylor, Esq., of the Philadelphia bar.

BRADLEY, Justice.   We are asked to grant an injunction in this case to restrain the defendants from publishing certain circular letters which are alleged to be libelous and injurious to the patent-rights and business of the complainants, and from making or uttering libelous or slanderous statements, written or oral, of or concerning the business of the complainants, or concerning the validity of their letters patent, or of their title thereto, pending the trial and adjudication of the principal suit, which is brought to restrain the infringement of said patents.   The application seems to be altogether a novel one, and is urged principally upon a line of recent English authorities, such as *Dixon* v. *Holden*, L. R. 7 Eq. 488; *Thorley's Cattle-food Co.* v. *Massam*, 14 Ch. Div. 763; *Thomas* v. *Williams*, Id. 864; and *Loog* v. *Bean*, 26 Ch. Div. 306.   An examination of these and other cases relied on convinces us that they depend on certain peculiar acts of parliament of Great Britain, and not on the general principles of equity jurisprudence.

By the common-law procedure act of 1854 (17 & 18 Vict. c. 125, §§ 79, 81, 82) it was provided that, "in all cases of breach of contract, or other injury, where the party injured is entitled to maintain and has brought an action, he may   *   *   *   claim a writ of injunction against the repetition or continuance of such breach of contract or other injury," etc.; and "in such action judgment may be given that the writ of injunction do or do not issue, as justice may require." And, further, (section 82,) the plaintiff may, at any time after the commencement of his action, apply, *ex parte,* for an injunction. This statute gave to the judges of the common-law courts the power to issue injunctions in the cases specified, (*i. e.*, breaches of contract or other injury,) to prevent a repetition or continuance of the injury for which suit was brought.

By the judicature act of 1873 (36 & 37 Vict. c. 66, § 16) it was enacted that the high court of justice should have and exercise "the jurisdiction which, at the commencement of this act, was vested in, or capable of being exercised by, all or any one or more of the judges in [the common-law] courts, respectively, sitting in court, or in chambers, or elsewhere, when acting as judges or a judge in pursuance of any statute, law, or custom; and all powers given to any such court, or to any such judges or judge by any *statute,* and also all ministerial powers, duties, and authorities incident to any and every part of the jurisdiction so transferred."

As the high court of justice established by the judicature act of 1873 was an amalgamation of all the courts of original jurisdiction of Westminster Hall, including the court of chancery, which became merely one of the divisions of the high court, it follows that the court of chancery became invested with the jurisdiction which was given to the common-law courts by the common-law procedure act of 1854; and hence became invested with the power to grant injunctions to prevent the continuance or repetition of an injury which was actionable

in any court, and for which an action was brought, although the power to grant injunctions in cases of libel was resisted, in several instances, by very high authority; as in the case of *Prudential Assur. Co.* v. *Knott*, 10 Ch. App. 142, by Lord Chancellor CAIRNS and Lord Justice JAMES, and in that of *Beddow* v. *Beddow*, 9 Ch. Div. 89, by Sir GEORGE JESSEL. The practice of issuing such injunctions, however, finally prevailed.

This statute law of Great Britain is sufficient to account for the English cases relied on by the complainant, and is undoubtedly the basis on which they really stand.

In the case of *Thorley's Cattle-food Co.* v. *Massam*, 14 Ch. Div. 763, a leading case on the subject, MALINS, V. C., says, referring to previous cases:

"I think these cases at law establish this doctrine: that where one man publishes that which is injurious to another in his trade or business, that publication is actionable, and, being actionable, will be stayed by injunction, because it is a wrong which ought not to be repeated."

This is an evident reference to the common-law procedure act; and other cases expressly refer to the act. Thus, in the case of *Quartz Hill Consolidated Min. Co.* v. *Beall*, 20 Ch. Div. 501, as late as 1882, Sir GEORGE JESSEL says:

"This is an appeal from Vice Chancellor BACON, granting an injunction, upon interlocutory application, to restrain the publication of a libel. I have no doubt whatever that there is jurisdiction to grant such an injunction. It is plain that the jurisdiction conferred on the common-law courts by the common-law procedure act of 1854 extended to the granting of such an injunction. The seventy-ninth section is as large in terms as can well be, and the eighty-second section allows *ex parte* injunctions in every case where a final injunction would be granted under the seventy-ninth section. Of course, under the rule of *omne majus continet in se minus*, if the court can grant an injunction *ex parte*, *a fortiori*, it can grant it on notice. It is therefore clear, to my mind, that the common-law courts had this jurisdiction in all common-law actions. That jurisdiction is transferred to the high court, and that would suffice to decide this question of jurisdiction. But by the judicature act of 1873, § 25, subs. 8, a larger jurisdiction to grant injunctions than existed before is given in every case; and, in my opinion, that enactment extends the general jurisdiction given in common-law actions to all actions, whether in equity or at common law. The result, therefore, is that there is jurisdiction, in a proper case, upon interlocutory application, to restrain the further publication of a libel."

But neither the statute law of this country, nor any well-considered judgment of the courts, has introduced this new branch of equity, into our jurisprudence. There may be a case or two looking that way, but none that we deem of sufficient authority to justify us in assuming the jurisdiction. The authority of the supreme court of Massachusetts in the cases of *Boston Diatite Co.* v. *Florence*, 114 Mass. 69, and *Whitehead* v. *Kitson*, 119 Mass. 484, is flatly against it. So, also, are the New York cases of *New York Juvenile, etc., Soc.* v. *Roosevelt*, 7 Daly, 188; *Brandreth* v. *Lance*, 8 Paige, 24; *Mauger* v. *Dick*, 55 How. Pr. 132. Also the Georgia case of *Cas-*

*well* v. *Central R. Co.*, 50 Ga. 70; and the Missouri case of *Life Ass'n of America* v. *Boogher*, 3 Mo. App. 173. We do not regard the contrary decision in *Croft* v. *Richardson*, 59 How. Pr. 356, as of sufficient authority to counteract these cases, or to disturb what we consider to be the well-established law on the subject. That law clearly is that the court of chancery will not interfere, by injunction, to restrain the publication of a libel; as was distinctly laid down by Lord Chancellor CAIRNS in the case of *Prudential Assur. Co.* v. *Knott*, 10 Ch. App. 142, where he says, in reference to the application for an injunction to restrain a libel calculated to injure property: "Not merely is there no authority for this application, but the books afford repeated instances of the refusal to exercise jurisdiction;" and then refers to several authorities. If this decision has since been overruled, it is only because of the enlarged jurisdiction conferred upon the English courts by the statutes referred to, and is a standing authority as to the general law independent of legislation. We do not think that the existence of malice in publishing a libel, or uttering slanderous words, can make any difference in the jurisdiction of the court. Malice is charged in almost every case of libel, and no cases of authority can be found, we think, independent of statute, in which the power to issue an injunction to restrain a libel or slanderous words has ever been maintained, whether malice was charged or not. Charges of slander are peculiarly adapted to and require trial by jury; and exercising, as we do, authority under a system of government and law which by a fundamental article secures the right of trial by jury in all cases at common law, and which by express statute declares that suits in equity shall not be sustained in any case where a plain, adequate, and complete remedy may be had at law, as has always heretofore been considered the case in causes of libel and slander we do not think that we would be justified in extending the remedy of injunction to such cases.

The application for an injunction must be denied, and the ancillary bill is dismissed, with costs.