8 So.2d 852

## HENLEY v. ROCKETT.

### 5 Div. 360.

Supreme Court of Alabama.

June 5, 1942.

Rehearing Denied June 30, 1942.

D. G. Ewing and Earl McBee, both of Birmingham, for appellant.

Reynolds & Reynolds, of Clanton, for appellee.

BOULDIN, Justice.

Broadly speaking this may be styled a bill in equity by a married woman to enjoin another woman from alienating the affections of complainant's husband. The trial court overruled demurrers going to the equity of the bill, and after notice and hearing, granted a temporary injunction as prayed. The appeal is from these rulings.

Whether equity has jurisdiction to entertain such a bill; and, if so, under what conditions should a court of equity entertain and grant injunctive relief, are grave questions of first impression in this state.

Dealing with domestic relations so intimate as between husband and wife, it may be said the courts generally hesitate to deal with such problems. But few cases have reached appellate courts; which of itself argues that such relief has not frequently been sought.

■ Touching jurisdiction in equity certain well-known rights come into view. Marriage is contractual, a covenant relation, resulting in the marital union in which each spouse has the unquestioned right to all the fealties on the part of the other, known as consortium.

■ In Woodson v. Bailey, 210 Ala. 568, 98 So. 809, 810, an action for damages at law for the alienation of affections, it was said: "These rights have been defined in this form of action to include the person, affection, society, and assistance. The terms 'service,' 'aid,' 'fellowship,' 'companionship,' 'company,' 'co-operation,' and 'comfort' have also been employed in defining those mutual and special rights growing out of the marriage covenant. The loss of consortium is the loss of any or all these rights. 12 C.J. 532; 30 C.J. 1123, § 977; 2 Words & Phrases, First Series, 1453; 13 R.C.L. 507."

■ It is now well settled here and elsewhere that injunctive relief is not limited to the protection of property rights, but extends to the protection of personal rights in many fields where no adequate remedy at law is available. Indeed, it may be truly said the protection of property rights derives from the value of property to the owner, supplying the means, the comforts, and many of the incidents of a fuller life. Try-Me Bottling Co. et al. v. State, 235 Ala. 207, 178 So. 231; State v. Ellis, 201 Ala. 295, 78 So. 71, L.R.A.1918D, 816; 14 A. L.R. 295.

■ On these premises it has been held that the hand of the court of equity may be extended to prevent an intrusion of a third person into family affairs, destructive of the consortium between spouses.

■ "One spouse may enjoin a third person from alienating the affections of the other spouse in a proper case." 27 Am. Jur. 121, § 520.

This text is supported by Hall v. Smith, 80 Misc. 85, 140 N.Y.S. 796; Ex parte Warfield, 40 Tex.Cr.R. 413, 50 S.W. 933, 76 Am.St.Rep. 724; Smith v. Womack, Tex.Civ.App., 271 S.W. 209; Buell Stark v. Hamilton, 149 Ga. 227, 99 S.E. 861, 5 A. L.R. 1041; Annotation 108 A.L.R. 429.

The most widely considered case coming to our attention is Snedaker v. King, 111 Ohio St. 225, 145 N.E. 15, 17, by the Supreme Court of Ohio.

Four opinions disclose much thought and wide divergence of views.

That was an injunction suit by the wife against another woman, charging a designed coming between husband and wife, winning his affection, etc., much as in the present bill. The trial court granted a sweeping injunction. In the Per Curiam opinion of the majority, the court said: "Such extension of the jurisdiction of equity to regulate and control domestic relations, in addition to the legal and statutory remedies already provided, in our opinion is not supported by authority, warranted by sound reason, or in the interest of good morals or public policy. The opening of such a wide field for injunctive process, enforceable only by contempt proceedings, the difficulty if not impossibility of such enforcement, and the very doubtful beneficial results to be obtained thereby, warrant the denial of such a decree in this case."

Justice Allen concurred stressing the futility of such decree; observing that forbidding a man and woman to see each other or to speak to each other would add fuel to the flame, etc.

Chief Justice Marshall begins a vigorous dissent in these words: "The statement of facts in the brief per curiam opinion shows that this is a case where a lawful, dutiful wife has invoked the aid of a court of equity to protect her marriage contract, her home, and her little brood of infant children, against a 'vampire' who persists in her efforts to win the husband and father from the performance of his duties to his home and family."

He stresses the contract rights of the wife saying: "I am of the opinion that the principle involved in this case is exactly identical with that numerous class of cases where equity has not hesitated to exercise its jurisdiction to protect a contract right against undue influence by persons not parties thereto. A contract right has uniformly been held to be a property right, and it has been further held that inducing a breach of such a contract is an actionable tort. While injunction does not lie in all such cases, it is very generally held that an injunction will lie to restrain

third persons from inducing the breach of a lawful contract by one of the parties thereto, when it will result in irreparable injury. * * * If, as seems to be feared by the majority, the trial court will have some difficulty in enforcing the order entered in this case, that difficulty need give this court no immediate concern. I anticipate, however, that the defendant would not lightly disobey the injunction, if it is permitted to stand. The commercial interests of the state of Ohio should not be the only concern of the courts of the state. All property rights and interests, even though growing out of the marriage relation, are entitled to the care and consideration of our courts quite as much as those other interests growing out of commercialism."

He does not limit his discussion to contract rights, but proceeds to review and approve the authorities above cited, basing the jurisdiction on protection of the personal rights which inhere in the relation of husband and wife.

Mr. Justice Day follows with a well-reasoned opinion sustaining the jurisdiction of a court of equity, which was deemed the only question for the appellate court. He then held: "For reasons of expediency and public policy, the chancellor might well refuse the assistance of a court of equity, as the consortium, affection, and support of a husband that must be vouchsafed to the wife by an injunction restraining other women from enticing him from his wife is of such doubtful value and character that the action of a court of equity would avail very little to benefit the wronged spouse." (See also Pomeroy's Equity Jurisprudence, § 1338.)

He concludes: "I am of opinion that the injunction granted in the present instance was far broader than necessary, and that, as far as the injunction should go, would be to enjoin the plaintiff in error from visiting or associating with defendant in error's husband, and from doing any act preventing or tending to prevent the husband from giving to his wife the love, affection, companionship, or conjugal relation to which she is entitled, and that the plaintiff in error should not interfere with the defendant in error in her efforts to regain the love, esteem, affection, support and conjugal relation. If the injunction were modified in this form, and, considering the matter as a pure question of equitable principles, concerning personal and property rights growing out of the marriage relation, I am * * * con-

strained to the conclusion that the equitable power exists, even though it should rarely be exercised, and that, therefore, the conclusion of the courts below should be affirmed."

We are of opinion the weight of authority and reason support the text of 27 Am.Jur. supra.

■ Whether this record presents a proper case for injunctive relief was, in the first instance, a question for the trial judge. He has a measure of judicial discretion in such matters; subject, however, to review by this court not merely on the question of jurisdiction, but also that of expediency and sound policy.

On these issues we think the man in the case furnishes food for thought.

He moved to Clanton, with his family, wife and one son, some twenty years ago as a public official elected by the people of his county. He built a home for himself and family, and in time a home for his son and family. He opened and operated a successful business and was respected by his neighbors.

He is now sixty-four years of age. A few years ago he retired from active business, turned the business and other properties over to the management of his son, retired, became a loiterer without responsibility. He drank, the habit grew on him. Under the evidence, he has been drunk or drinking much of his time of late years.

The moral let down, and even bad health, to say nothing of the care he became to his family, we are persuaded, is largely traceable to drink. He has a build up in his own mind, we find from his affidavit, that his wife was overbearing and nagging, and he was quite willing to see her leave her home shortly before this suit was filed.

Respondent, thirty-six years of age, a mother of a young daughter, for years a rather frugal teacher in the public schools, has in late years persistently promoted an affair with him, which every right thinking person must condemn. That this has lowered the self-respect of both, and had much to do with breaking down the normal relations between husband and wife, we are fully persuaded. To what extent sex, a desire for adventure and pastime, sympathy or affection for the man, has figured, it is unnecessary to find. She has sought his companionship in a way that pertains only to that of a wife; clandestine at times, ill-concealed at others. She has driven him in

her car to his camp, where they have been together alone for some days and nights, while he drank to excess, impairing his vitality and self-control in marked degree. This affair may well be found to be a real factor in his moral let down and contributed to his excessive drinking.

Mistreatment of the wife, the reflection on their children, the social hurt by such example, all plead that the affair be ended. These things enter into the question of good policy. Sure, people can not be made moral by coercion, nor can any court process compel right feelings and a due sense of the sacredness of the family relation.

But can it be said that putting a stop to such affair can not open the way for a reassertion of the husband's better self, mastery over his drinking habit, and thus, in some measure, protect the wife in her right of consortium?

It takes two persons, the man and the woman, to form two sides of a triangle of this sort. The right to live one's own life does not carry the right to disturb and break down relations in which another has a right of the most sacred sort.

There has been no failure of the husband to furnish the wife adequate support; nor do we think there is any threatened loss of maintenance, calling for injunctive or other available relief in that regard.

But support is only one element of consortium. Properly construed, the temporary injunction forbids those acts on the part of respondent tending to cultivate and keep up the wrongful relation between her and complainant's husband, as featured in the particular case.

Actions at law for damages for alienation of affections or criminal conversation have been abolished by statute in Alabama. Title 7, § 115, Code of 1940. The legislative policy of this act was discussed in Young v. Young, 236 Ala. 627, 184 So. 187.

■■ We do not think it condones in any way the grievous wrongs of such course of conduct, nor strikes down any other remedy, legal or equitable. See Constitution of Alabama, Article 1, Section 13.

■ The right of respondent to entire freedom, whether this brings her in contact with the husband or not, and the right to speak to him as other neighbors, we do not consider within the terms of the injunction. Respondent, we think, will not be at a loss as to deportment tending to keep up improper

relation. That is the purpose of the temporary injunction.

Let rulings of the court below stand affirmed, pending a final disposition of the cause, with power in the court below to modify the writ at any time as equity and right shall appear.

Affirmed.

GARDNER, C. J., and FOSTER and LIVINGSTON, JJ., concur.