11 So.2d 383

**CARTER et al. v. KNAPP MOTOR CO., Inc.**

**6 Div. 49.**

Supreme Court of Alabama.

Jan. 14, 1943.

Erle Pettus, of Birmingham, for appellants.

Mullins & Deramus, of Birmingham, for appellee.

602

GARDNER, Chief Justice.

The Knapp Motor Company is a corporation engaged for a long number of years in the sale of automobiles in the city of Birmingham and particularly the car known as the "Hudson", holding a valuable franchise from the manufacturer for that particular vicinity. The said motor company filed this bill seeking injunctive relief against the defendants from exhibiting on the streets in the said city and in the vicinity of its place of business, a Hudson car, possessed by defendants, which has painted on the sides and on the rear a large white elephant against a dark background with the word "Hudson" in enlarged letters written above. The photographs made exhibits to the bill clearly emphasize the averments in this regard. The demurrer of the defendants to the bill as last amended was overruled, and from that decree this appeal is prosecuted.

The bill discloses that throughout the years complainant has built up a prosperous business and expended large sums of money in the establishment of a good will for itself and the products which it sells to the public, "that it bears a good name with respect to its own integrity, as well as for the integrity of its products, including the Hudson cars for the sale of which it has held for years a valuable franchise; that defendants have no business in which the symbol of a white elephant could play any part, defendant Carter being a police officer and defendant Gower a workman for an industrial concern; that the "white elephant" symbol has become established in the minds of the public as denoting something of an inferior quality, and that the name and sign have acquired and are used to cast a "slur" upon any product so designated; that people generally in speaking of any automobile or any other merchant-able product as being a "white elephant" meant thereby that said automobile or product was not merchantable and was of no value; that the public did consider display of any such sign on the automobile as denoting its worthless character. It is further alleged that innumerable telephone calls and verbal inquiries have been made to complainant concerning the reason of this action on the part of these defendants, and inquiries have been made to complainant as to whether or not in fact the Hudson car was a "white elephant" and worthless.

As to any remedy at law the averments are: "Complainant avers that the action of the respondents in so doing is likely to result in irreparable injury to the complainant, which said injury cannot be reasonably measured by any monitary standard, and some of a large portion of said loss or injury to the complainant proximately caused by the wrongful acts of the respondents will likely be unknown to the complainant; that the loss of business likely to be incurred by the complainant is incapable of exact measurement."

In paragraph three complainant states the facts indicating purpose of defendants in thus advertising the Hudson car as a "white elephant" in the streets of the city of Birmingham, in the following averments:

"Third: Complainant avers that sometime prior to the institution of this bill, the respondents, Carter and Gower, purchased or came into control of a 'Hudson' make automobile of a recent type or year model, which they did not purchase by or secure from the complainant, and your complainant was in nowise involved in the sale of said automobile to the respondents or in the delivery of the same to the respondents. Complainant is informed and believes, and upon such information and belief avers that the said 'Hudson' automobile owned or in the control of the respondents was purchased or delivered to the respondents by some other 'Hudson' automobile dealer having no connection whatsoever with the complainant. Complainant avers that, to-wit, several months prior to the institution of this bill, the respondent Carter informed an officer of the complainant that the 'Hudson' automobile in question and the one in his possession was badly in need of some repairs, which he, the said respondent Carter, said would have to be made by the complainant without any

charge or cost to said respondent; that after some conversation said respondent finally informed the complainant that the 'Hudson' automobile then in his possession was not performing satisfactorily and that he, the respondent Carter, would not be satisfied unless and until the complainant gave him another automobile for or in lieu of the 'Hudson' automobile then in his possession. Complainant avers that it was under no contract to perform or make said repairs or to furnish said respondent another automobile and was under no duty to do so, either legal or moral, and your complainant so advised said respondent Carter; that upon being so advised, the respondent Carter informed your complainant that 'he would be sorry about it', and that he, the respondent Carter, would in the future certainly make the complainant regret that it had not made said repairs or furnished another automobile in lieu of the said Hudson automobile then in said respondent's possession, and further informed an officer of the complainant that he would certainly 'advertise it' to the public generally."

And complainants allege further that defendants, upon request to desist, insisted they would continue the practice until complainant gave them another Hudson automobile in lieu of the one they then possessed.

The bill thus clearly discloses that defendants are actuated by one motive only, that is, of coercing complainant, who was under neither legal nor moral obligation to do so, to give them another Hudson car.

■ ■ Our decisions are to the effect that the right to conduct one's business without the wrongful interference of others is a valuable property right which will be protected, if necessary, by injunctive process. Bowen v. Morris, 219 Ala. 689, 123 So. 222. And the enjoyment of the good name and good will of a business is likewise a valuable property right subject to like protection. Bankers' Fire & Marine Ins. Co. v. Sloss, 229 Ala. 26, 155 So. 371. One's employment, trade or calling is likewise a property right, and the wrongful interference therewith is an actionable wrong. United States Fidelity & Guaranty Co. v. Millonas, 206 Ala. 147, 89 So. 732, 29 A.L.R. 520.

■ Clearly enough the averments of the bill suffice to show a wrongful interference on the part of defendants with complainant's lawful business, its good will and name as well as the good name of its products, including the Hudson car, and this interference is to coerce complainant into giving defendants another car, though complainant had no connection with the sale of the car now possessed by defendants and is under no character of obligation, to comply with such a demand. It is clear enough, also, the remedy at law is wholly inadequate. Complainant's damages can not be measured—it is unable to lay its finger, perhaps, upon the loss of a single sale of a car or of a single customer. But the averments show many inquiries indicating some doubt in the minds of the public thus aroused, increasing as the unlawful conduct continues and as time goes on.

This Court in Bowen v. Morris, supra, made the following observation here pertinent:

"Awaiting the uncertainties as to quantum of damages, the delay in recovery which within itself, in a case like this, may increase them, are matters going to the adequacy of legal remedies." [219 Ala. 689, 123 So. 223.]

See also Henley v. Rockett, June 5, 1942, ante, p. 172, 8 So.2d 852.

The inadequacy of the remedy at law sufficiently is made to appear. We conclude, therefore, that the bill comes well within the influence of the principles of law recognized in the above cited authorities.

Doubtless the most impressive argument against this conclusion is to be found in the oft stated principle that equity will not exercise its jurisdiction for injunctive relief as against a mere slander or libel, though property rights will be affected thereby, the aggrieved party being left to his remedy at law, if any he has (28 Am. Juris. 312), though as observed by Mr. High in his work on injunctions (High on Injunctions, Third Edition, § 1015):

"* * * the authorities, both English and American, indicate a noticeable want of uniformity, and are, indeed, wholly irreconcilable."

Perhaps the strongest presentation of the above noted rule is to be found in the case of Marlin Firearms Co. v. Shields, 171 N.Y. 384, 64 N.E. 163, 59 L.R.A. 310, in the New York Court of Appeals, and in Citizens' Light, Heat & Power Co. v. Montgomery Light & Water Power Co., C.C., 171 F. 553. To like effect also are Kidd v. Horry, C.C., 28 F. 773, and Francis v. Flinn, 118 U.S. 385, 6 S.Ct. 1148, 30

L.Ed. 165. The reasoning is rested largely upon the constitutional guaranty of freedom of speech and reference is also made to the matter of trial ·by jury. See note to Finnish Temperance Society Sovittaja v. Riavaaja Publishing Company et al., 219 Mass. 28, 106 N.E. 561, Ann.Cas.1916D, 1087 and 1091. This latter case is distinguished by the Massachusetts Court in Lawrence Trust Co. v. Sun-American Publishing Co., 245 Mass. 262, 139 N.E. 655; and Hotel & Railroad News Co. v. Leventhal, 243 Mass. 317, 137 N.E. 534. And in Emack v. Kane, C.C., 34 F. 46, Kidd v. Horry, supra, is differentiated.

The Court of Appeals of New York in opinion by Chief Justice Cardozo cites the case of Marlin Firearms Co. v. Shields, supra, with the observation that equity does not intervene to restrain the publication of words on a mere showing of their falsity. But the opinion then proceeds:

"It intervenes in those cases where restraint becomes essential to the preservation of a business or of other property interests threatened with impairment by illegal combinations or by other tortious acts, the publication of the words being merely an instrument and incident." Nann v. Raimist, 255 N.Y. 307, 174 N.E. 690, 694, 73 A.L.R. 669.

The Illinois Court in Lietzman v. Radio Broadcasting Station W.C.F.L., 282 Ill. App. 203, likewise recognizes this distinction, stating that equity will not enjoin a mere slander or libel, even though property rights are affected, in the absence of acts of conspiracy, intimidations, or coercion, citing 22 Cyc. 900. To like effect is Gibraltar Savings & Building Ass'n v. Isbell, Tex.Civ.App., 101 S.W.2d 1029. An interesting discussion of questions of this character is to be found in an article by Dean Roscoe Pound, reproduced in XXIX Harvard Law Review, p. 640, and to which some of the authorities cited herein direct attention.

Whatever may be said, therefore, concerning the conflicting views as to injunctive relief against slander and libel, though property rights are affected, we think it clear the averments of the bill bring this case within the exception to the rule as stated in Nann v. Raimist, supra, from the Court of Appeals of New York, which exception appears to be well recognized by the authorities.

Here defendants are engaged in wrongful conduct, irreparably harmful to complainant's business and good name of its products, and this for the sole purpose of forcing complainant to give them something for nothing, to do that which they are not obligated to do either morally or legally. Under these circumstances, with no adequate remedy at law available, we think complainants are entitled to injunctive relief. As said by Chief Justice Cardozo in the Nann case, supra, the "slurring" publication of defendants is "merely an instrument and incident," to the relief sought against the tortious conduct. And as observed by the United States Supreme Court in Jones v. City of Opelika, 316 U.S. 584, 62 S.Ct. 1231, 1237, 86 L.Ed. 1691, 141 A.L.R. 514:

"* * * courts are competent to adjudge the acts men do under color of a constitutional right, such as that of freedom of speech * * * and to determine whether the claimed right is limited by other recognized powers, equally precious to mankind."

And again the same Court in Carpenter's and Joiner's Union of America v. Ritter's Cafe, 315 U.S. 722, 62·S.Ct. 807, 809, 86 L.Ed. 1143:

"Whenever state action is challenged as a denial of 'liberty', the question always is whether the state has violated the 'essential attributes of that liberty.'"

Counsel for appellee cite Hardie-Tynes Mfg. Co. v. Cruise, 189 Ala. 66, 66 So. 657, which contains statements of principles much in harmony with Bowen v. Morris and Banker's Fire & Marine Ins. Co. v. Sloss, heretofore noted, but that case is now to be considered in the light of the ruling of the United States Supreme Court in Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093, wherein our statute (referred to in the Hardie-Tynes case, supra) condemning "peaceful picketing" was held in violation of our Federal Constitution, and by which decision of course, this Court is bound. A. F. of L. v. Bain (Congress of Industrial Organizations v. Bain), 165 Ore. 183, 106 P.2d 544, 130 A.L.R. 1278.

This question also finds discussion in Milk Wagon Drivers Union v. Meadowmoor Dairies, Inc., 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836, 132 A.L.R. 1200, and Bakery & Pastry Drivers & Helpers, I. B. T. v. Wohl, 315 U.S. 769, 62 S.Ct. 816, 86 L.Ed. 1178. But cases of this character require no further discussion here.

We are persuaded that upon well established principles recognized in our decisions complainant has made out a case for injunctive relief and that the decree rendered overruling the demurrer is due to be sustained. It is so ordered.

Affirmed.

All the Justices concur except BROWN, J., dissenting.