James HAJEK, Appellant,

v.

BILL MOWBRAY MOTORS, INC., Appellee.

No. 2620cv.

Court of Appeals of Texas, Corpus Christi.

Oct. 14, 1982.

Ed Stapleton, Atty. at Law, Brownsville, for appellant.

Robert Whittington, O'Leary, Sanchez & Benton, Attys. at Law, Brownsville, for appellee.

Before NYE, C.J., and UTTER and GONZALEZ, JJ.

## OPINION

GONZALEZ, Justice.

This is an appeal from an order granting a temporary injunction, enjoining appellant-defendant James Hajek, from publishing and circulating defamatory statements which were painted on a vehicle appellant purchased from appellee-plaintiff Bill Mowbray Motors, Inc.

The issue is whether the temporary injunction constitutes an impermissible restraint on appellant's First Amendment rights. We affirm.

In early 1981, appellant special ordered a new 1981 Dodge Maxi van. Appellant explained to salesman, Jerry Roberts, that he wanted something economical but still capable of carrying small items. Shortly after taking delivery, appellant returned to the dealer and complained that the van was underpowered. Appellant had modified the van by installing a windshield visor, a vent on the roof and a plastic air dam on the bottom of the vehicle. Roberts accompanied appellant on a test drive and concluded that although underpowered in certain situations, the van performed in accordance with factory specifications.

On April 11, 1981, appellant wrote Chrysler Corporation, complaining of poor performance and inquired about a 30-day money back guarantee which Chrysler had previously used to promote sales. Chrysler informed appellee of this letter. Appellee, contacted appellant and offered to exchange the van for a different one, but Hajek rejected the offer because of appellee's insistence on a depreciation allowance.

Appellant then painted the complained of statements on his van. The statements were painted in bright yellow, with approximately foot-high letters, on appellant's brown van:

(1) On the left side:

"Jerry Roberts sold this (representation of a lemon) Disaster (representation of a lemon) At Bill Mowbray Motors Inc. Help! It's a Dog!"

(2) On the rear:
   "Help Bill Mowbray Motors Inc. Sold
   this (representation of a lemon)"

(3) On the right side:

"I bought this (representation of a lemon) At Bill Mowbray Motors Inc. Unhappiness! Help! (two representations of single lemons)"

(4) On the front:                                    "Disaster!"

On February 17, 1982, appellee again conducted a test drive. The van exceeded 55 miles per hour both with and against the wind, although it was underpowered in fourth gear going up over an overpass. Appellee was of the opinion that the van performed adequately for its size engine and transmission. With the matter unresolved and appellant's van moving conspicuously in the vicinity of the dealer and around the city, and people asking about "the story," appellee sued for a temporary injunction and in the alternative damages.

At the hearing, appellant complained of poor performance and said that the van got better gas mileage in third gear than in fourth. This was the sum total of appellant's evidence.

■ At the outset we note that the trial court has broad discretion in determining whether to issue a temporary injunction to preserve the rights of the parties pending the outcome of a case. When the discretion of the trial court is exercised, its order should not be overturned on appeal unless the record discloses a clear abuse of that discretion. *Texas Foundries v. International Moulders & Foundry Workers' Union,* 151 Tex. 239, 248 S.W.2d 460, 462 (1952); *Conley v. Brownsville Medical Center,* 570 S.W.2d 583 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). Moreover, the appellate court is required to view the evidence and to draw legitimate inferences from the facts in evidence, in the light most favorable to the trial court's judgment. *Powers v. Lynn,* 523 S.W.2d 271 (Tex.Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.). However, any prior restraint on speech and publication, whether the speech was intended to have a coercive impact or not, is heavily presumed to be constitutionally invalid. *Organization For a Better Austin v. Keefe,* 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971); *Amalgamated Meat Cutter v. Carl's Meat & Provision Company,* 475 S.W.2d 300 (Tex.Civ.App.—Beaumont 1971, writ dism'd).

In his first point of error, appellant contends that the trial court erred in finding the complained of statements false and de-

famatory. Appellant points to the undisputed fact that he purchased the van from Jerry Roberts at Bill Mowbray Motors, Inc., as painted on the van. He then argues that "Disaster", "Help", "It's a Dog", "Unhappiness", and the illustrated lemons refer to the vehicle, not the appellee, and that in order to impute impropriety to appellee, one would have to extend the meaning of the language beyond that clearly stated. We disagree.

■■■ In determining whether a statement is libelous, the statement should be construed as a whole in light of the surrounding circumstances from the aspect of how a person of ordinary intelligence would view the entire statement. *Taylor v. Houston Chronicle Publishing Co.*, 473 S.W.2d 550 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.), *Southern Publishing Co. v. Foster*, 53 S.W.2d 1014 (Tex.Comm'n App.—1932, opinion adopted). In making this determination, the opinion of the parties has no bearing on whether the complained of words are actually defamatory. *Arant v. Jaffe*, 436 S.W.2d 169 (Tex.Civ. App.—Dallas 1968, no writ).

■ With the above rules in mind, we believe that appellant by his use of lemons next to appellee's name has imputed certain business improprieties to appellee. As was noted in *Johnson v. John Deere Co.*, 306 N.W.2d 231, 233 (S.D.1981), the term "lemon" has a well recognized connotation. It indicates chronic breakdowns and delays in repair of the kind experienced in *Johnson.* There a tractor was built with wrong size bolts on the front wheels, developed oil leaks, transmission and fuel injection problems, suffered problems with water hoses and experienced delays in repairs. By contrast, in our case the van did not suffer any of the symptoms commonly associated with "lemons." Except for appellant's opinion that the vehicle was underpowered in certain situations, the vehicle performed in accordance with factory specifications. Therefore, the trial court did not err in finding that appellant's characterizations of this van as a "lemon" was false, and we now turn to whether this falsity defamed appellee.

*Libel*

■ Libel is a defamation expressed in printing or writing, or by signs and pictures, or drawings tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity, or virtue, or reputation of any one, or to publish the natural defects of anyone and thereby expose such person to public hatred, ridicule or financial injury. Tex.Rev.Civ.Stat.Ann. Art. 5430 (Vernon 1958). Also, a corporation can be libeled. *General Motors Acceptance Corp. v. Howard*, 487 S.W.2d 708 (Tex. 1972). The trial court did not err in finding that appellant's actions impeached appellee's reputation. We do not agree with appellant's argument that while the van may have been defamed, appellee was not. Appellant asks us to ignore the fact that he has labeled appellee a "lemon" seller, and by inference, a dealer who fails to remedy his customer's bona fide complaints after the sale. Appellant's first point of error is overruled.

*Libelous Per Se—Public Figure*

■ In his second point of error, appellant contends that the statements were not actionable per se and that there was no evidence of damage to appellee. As was set out in *Bell Publishing Co. v. Garrett Engineering Co.*, 141 Tex. 51, 170 S.W.2d 197, 202 (Tex.Comm'n App.1943, opinion adopted):

"It is well settled that false words which tend to prejudice a person spoken of in his business, profession, office, occupation, or employment are actionable without proof of special damage if they affect him in such business, profession, office, occupation, or employment, in a manner that may, as a necessary consequence, or does, as a natural consequence, prevent him from deriving therefrom that pecuniary reward which, probably, otherwise he might have obtained."

See also: *Bayoud v. Sigler*, 555 S.W.2d 913, 915 (Tex.Civ.App.—Dallas 1977, writ

dism'd) and cases cited therein; and *Stearns v. McManis,* 543 S.W.2d 659 (Tex. Civ.App.—Houston [1st Dist.] 1976, writ dismissed).

Appellant argues under this same ground of error that appellee is a "public figure" under *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and its progeny, apparently based on the fact that Mowbray is a business which advertises and puts its name before the public. We do not think the Supreme Court intended the "public figure" analysis to apply in situations like this. The dispute between Hajek and Mowbray does not pertain any public issue or concern. Appellant's second point of error is overruled.

*Free Speech*

In his third ground of error, appellant contends the temporary injunction abridges his right of free speech under the First and Fourteenth Amendments to the United States Constitution. Appellant characterizes his statements as "opinion" and argues that freedom of speech is absolute; that no matter how bizarre or offensive his statements might be, they should not be suppressed because society benefits from the competition of ideas and opinions.

Appellant, however, overstates the constitutional protection afforded one's right to speak. Until the Supreme Court's decision in *New York Times v. Sullivan, supra,* the First Amendment did not protect defamation at all. See *Beauharnais v. ıllinois,* 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed. 919 (1952). Robertson, Defamation and the First Amendment, 54 Tex.L.Rev. 199, 201 (1976).

We find nothing to indicate that the major changes in the standards applicable to defamation brought about by the Supreme Court since *New York Times Co. v. Sullivan, supra,* require dissolution of the temporary injunction. In fact, we find the rationale to support the contrary. In *Rosenblatt v. Baer,* 383 U.S. 75, 86 S.Ct. 669, 676, 15 L.Ed.2d 597 (1966) the Supreme Court stated that "(s)ociety has a pervasive and strong interest in preventing and redressing attacks upon reputation" and it acknowledged the tension between this interest and

the values nurtured by the First and Fourteenth Amendments. Later on, the Supreme Court noted in *Herbert v. Lando,* 441 U.S. 153, 99 S.Ct. 1635, 1640, 60 L.Ed.2d 115 (1979), that civil liability for defamation was well established in the common law when the First Amendment was adopted and there was no indication that the framers of the Constitution intended to abolish the liability.

In 1974, Justice Powell, writing for the court, noted that the "Court has struggled for nearly a decade to define the proper accommodation between the law of defamation and the freedoms of speech and press protected by the First Amendment." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). The Court then went on to say that "there is no constitutional value in false statements of fact." Neither the intentional lie nor the careless error materially advances society's interest in "uninhibited, robust, and wide-open" debate on public issues. According to the Court, that category of utterances which "are no essential part of any exposition of ideas, and are of slight social value as a step to the truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." Nonetheless, the court emphasized that the First Amendment requires that some falsehoods be protected in order to "protect speech that matters."

Since 1964, the Supreme Court has followed a staggered path in extending constitutional protection to defamatory utterances, at times providing wide protection, at other times retrenching. See, Robertson, Defamation and the First Amendment, *supra,* Anderson, Libel and Press Self-Censorship, 53 Tex.L.Rev. 422 (1975). The court has given great constitutional protection to statements made in connection with *public affairs* and *public concerns.* Appellant's statements do not deal with public affairs or concerns. Therefore, in balancing the public's interest in free and full exchange of ideas and the public's interest in freedom from destructive invasions of reputation, in the context of the facts of this case, we do not think that the U.S. Supreme Court's

rationale requires us to constitutionally protect appellant's statements defamatory of appellee's business reputation.

Appellant cites *Stansbury v. Beckstrom,* 491 S.W.2d 947 (Tex.Civ.App.—Eastland 1973, no writ) as authority for the proposition that the court erred in granting this temporary injunction. This was a case where a mother was dissatisfied with the charges a doctor had made in setting a broken finger in her son's hand. She and some of her friends picketed the doctor's office with signs indicating that the charge was outrageous. The doctor alleged that signs were false and libelous and obtained an injunction. The appellate court dissolved a temporary injunction, citing *Better Austin v. Keefe, supra,* as controlling. *Keefe* was a case where a real estate broker in Chicago obtained an injunction against a racially integrated community organization from distributing leaflets describing the broker's activities as "panic peddling" and "blockbusting." The U.S. Supreme Court dissolved the injunction based on the First Amendment right to free speech.

We do not disagree with the *Keefe* decision. However, the complained of words there were *neither defamatory nor false, and they did not impute professional or business misconduct,* unlike those in our case.

We find support for our decision in a number of cases. In *Carter v. Knapp Motor Co.,* 243 Ala. 600, 11 So.2d 383 (1943), injunctive relief was granted a dealer to prevent an unhappy customer from exhibiting a car on which he had painted large white elephants. The court noted that an injunction would not be issued against "a mere libel or slander" but would be granted in cases where business relationships are threatened. The court said:

"Our decisions are to the effect that the right to conduct one's business without the wrongful interference of others is a valuable property right which will be protected, if necessary, by injunctive process.... And the enjoyment of the good name and good will of a business is likewise a valuable property right subject to

like protection.... One's employment, trade or calling is likewise a property right, and the wrongful interference therewith is an actionable wrong..." Id. at 384.

Likewise, in *Saxon Motor Sales, Inc. v. Torino,* 166 Misc. 863, 2 N.Y.S.2d 885 (N.Y. 1938) and *Menard v. Houle,* 298 Mass. 546, 11 N.E.2d 436 (1937), it was held that automobile dealers were entitled to injunctive relief against dissatisfied customers who adorned their vehicles with disparaging symbols and comments. Both courts noted that such criticism was more than "mere libel" of the dealership's products.

In *McMorries v. Hudson Sales Corp.,* 233 S.W.2d 938 (Tex.Civ.App.—El Paso 1950, no writ), a case similar to this one, the appellate court dissolved an injunction because of a defect in the pleadings. The court recognized, however, that an injunction is proper to protect "natural and contractual rights" from interference by verbal or written threats. See also, *Lloyd and KDFW–TV v. Alaska Worldwide, Inc.,* 550 S.W.2d 343 (Tex.Civ.App.—Dallas 1977, no writ); *Hotel & Restaurant Employees' International Alliance & Bartenders' International League of America v. Longley,* 160 S.W.2d 124 (Tex.Civ.App.—Eastland 1942, no writ).

■ In his fourth point of error, appellant contends that there was no evidence to support a conclusion that his action was taken with a coercive intent. We disagree. Salesman Roberts testified that Hajek wanted Mowbray to replace the van's engine with a larger one. Although Hajek denied that his actions were motivated by a desire to force Mowbray to do anything, Roberts' testimony is sufficient to support the trial court's findings. We also note that Hajek himself said that without his actions, "they" would have let him talk until his tongue fell out. This certainly implies that he wanted to do more than merely talk or express his dissatisfaction. Appellant's fourth point of error is overruled.

The judgment of the trial court is affirmed.[1]

---

1. We strongly recommend that the trial court give this case a preferential setting on a trial of the merits.