The separation of powers among the branches of republican government inherent in the Alabama Constitution of 1901, and expressly set forth in §§ 42 and 43 thereof, requires the judicial branch to respect statutes duly enacted by the Alabama Legislature and otherwise in conformity with the Alabama Constitution. This is true even when a court has grave doubts about the wisdom or propriety of a statute.
In 1935, the Alabama Legislature abolished the ancient common-law tort of alienation *Page 257 
of affections — which recognized a civil cause of action for outside interference in marital relations — by passing what became §§ 6-5-331, Ala. Code 1975. Therefore, to the extent that the action at hand involves alienation of affections, it no longer has basis in Alabama law, and the trial court's judgment for the plaintiff must be reversed.
This case, however, is not presented as an alienation-of-affections action but rather as an action alleging negligence and wantonness on the part of a pastor who, while counseling James and Paris Faulkner purportedly to preserve and strengthen their marriage, simultaneously engaged in adultery [10] with Mrs. Faulkner, thus contributing to the breakup of the Faulkners' marriage.
In the main opinion, Justice Woodall cites a number of cases from other states in which statutes abolishing alienation-of-affections causes of action have been broadly interpreted to abolish causes of action brought under other theories or titles that are substantively indistinguishable from alienation-of-affections actions. Justice Woodall then argues that similar principles are found in Alabama law and that Ala. Code 1975, §§ 6-5-331, precludes Mr. Faulkner's action as an alienation-of-affections action being presented under other guises.
Although I agree with the holding of the main opinion, I write separately to caution that it not be extended so far as to bar an action against a state-licensed professional such as an attorney who seduces his client or a doctor who seduces his patient. I also write further to note that the lower court itself went too far in instructing the jury to find what amounts to clergy malpractice, because its doing so constituted an impermissible extrajurisdictional intrusion into the independent sphere of church government.
 I.
Alabamians have long recognized marriage as a divinely created institution that unites a man and a woman in a unique covenant. In support of this recognition, Alabamians have actively resisted efforts to alter the institution of marriage in any way that would deny or undermine its divine origin and sacred character.[11] Because of Alabama's consistently strong defense of marriage, I do not believe the Alabama Legislature intended that §§ 6-5-331 be interpreted as broadly as similar statutes in other civil government jurisdictions.
A review of the history of this provision and applicable court precedents supports this understanding. Three years after the legislature enacted §§ 6-5-331 in 1935, this Court held in Young v. Young, *Page 258 236 Ala. 627, 184 So. 187 (1938), that the statute abolished criminal conversation (action by a husband against a third party who had had sexual intercourse with the husband's wife). In 1942, however, when the passage of §§ 6-5-331 was still fresh in the Justices' minds, this Court held in Henley v. Rockett,243 Ala. 172, 8 So.2d 852 (1942), that §§ 6-5-331 did not bar a wife from seeking an injunction against a woman who sought to alienate the affections of the plaintiffs husband:
 "Actions at law for damages for alienation of affections or criminal conversation have been abolished by statute in Alabama. . . .
 "We do not think it condones in any way the grievous wrongs of such course of conduct, nor strikes down any other remedy, legal or equitable."
243 Ala. at 176, 8 So.2d at 855.
Likewise, even the Alabama cases cited by the majority in favor of its holding do not preclude the limited application of those cases that I suggest in this opinion. In Howton v.Avery, 511 So.2d 173 (Ala. 1987), the Court issued a one-page per curiam opinion that says only that adultery, alienation of affections, and criminal conversation are all inextricably intertwined. In D.D. v. C.L.D.,600 So.2d 219 (Ala. 1992), the Court held that a husband's action seeking damages from his adulterous wife and her lover for abuse of process, invasion of privacy, negligence, wantonness, and intentional infliction of emotional distress was in essence an alienation-of-affections action barred by §§ 6-5-331.
Neither Howton nor D.D., however, involved a breach of a professional duty. In neither of those cases did the alienation of affections occur during or in relation to the performance of professional duties by a psychologist, doctor, lawyer, guardian, or other professional licensed by the state. I do not believe the legislature ever intended that such professionals should be at liberty to take advantage of their clients, patients, wards, or other recipients of professional services with impunity. One who undertakes to provide such services assumes certain duties to the patient or client, and entering into a sexual relationship with that patient or client while per-forming such services may be a breach of that professional duty. Nothing in the legislative history or the decisions of this Court suggest anything to the contrary.
 II.
Nevertheless, it would be improper for the courts to find that Bailey, as pastoral counselor to the Faulkners, breached a professional duty owed to them. This is not because clergymen are not professionals or because they owe no duty to those they counsel; rather, it is because the nature of church and state as distinct spheres of government precludes state oversight of matters, such as the nature and limits of authority for pastoral counseling, that belong to the jurisdiction of the church. Bailey's authority to counsel is based on the Bible and derived from his status as a pastor of his church; it does not, and should not, derive from a state licensing board. Consequently, civil government involvement in what amounts to claims of "clergy malpractice" is a legal and constitutional minefield that courts have rightfully refused to enter.
In any area of tort law enforceable by state courts, there must be a legal duty to conform to a standard of care. For most people, the standard is that of a reasonable man. A state-licensed professional, however, is judged by the higher standard of care imposed by the rules of his profession or the standard normally practiced by a reasonable practitioner of his profession. For example, a medical doctor is judged *Page 259 
by the standard of a reasonable doctor. The standard of care for a medical specialist is even higher, reflecting the particulars of the field of specialty. What is common to each of these professional standards and their corresponding duties of care is that the state plays a role in establishing, or at least confirming, those standards and, consequently, in litigation before a court may judge those standards and their application or misapplication.
Although a church clergyman is also a professional — in fact, a member of one of the first professions historically recognized — his status derives from the church, not the state, and his professional standards are based on the Bible and church doctrine, not on civil government statutes. Furthermore, when clergymen counsel their parishioners, their advice almost inevitably involves theology and doctrine as applied to practical living. Because of this, different churches and different pastors will teach and apply different understandings of doctrine.
For example, some churches and pastors believe divorce is wrong under all circumstances, others believe divorce is justified in cases of adultery or abuse or other circumstances, and others simply accept divorce as necessary in some cases without finding explicit grounding for their view in Biblical authority. Similarly, pastors and other religious counselors may differ in their views of procreation, child discipline, and other issues about which parishioners may seek counseling. Whatever the issue and however well or poorly a teaching or its application are grounded in Biblical authority, does the state have the competence or the authority to address these issues and set a standard for appropriate religious counseling? It does not.
In fact, if the civil authority were even to attempt to establish a standard for judging clergy malpractice, the state would unavoidably entangle itself in matters of theology and church doctrine that are not only outside its proper jurisdiction, but also in violation of the establishment clause of Art. I, §§ 3, of the Alabama Constitution of 1901, which is designed to protect the right of people of Alabama to worship God and otherwise to fulfill religious duties without interference by civil government authorities, including judicial authorities.
Given the fact that the state has neither the ability nor the authority to identify or enforce the proper standard of care for religious counseling, the State of Alabama has wisely and consistently refused to recognize a tort of clergy malpractice.
In Handley v. Richards, 518 So.2d 682 (Ala. 1988), this Court affirmed the trial court's order granting a motion to dismiss an action on the ground that Alabama does not recognize a cause of action for clergy malpractice. Justice Maddox, in his special concurrence, noted the case ofNally v. Grace Community Church of the Valley,157 Cal.App.3d 912, 204 Cal.Rptr. 303 (1984), as the first case to advance the theory of clergy malpractice,[12] and also notedHester v. Barnett, 723 S.W.2d 544 (Mo.Ct.App. 1987), in which the Missouri Court of Appeals held that the tort of clergy malpractice does not exist in Missouri.
The Alabama Supreme Court again refused to recognize a tort of clergy malpractice in Peelegrine v. Sullivan,741 So.2d 406 (Ala. 1999). In his special concurrence *Page 260 
in Peelegrine, Justice Houston specifically adopted Justice Maddox's special concurrence in Handley, supra. In short, Alabama has never recognized a tort of clergy malpractice, nor, so far as I can tell, has any other state, and with good reason: This is an area in which the courts simply do not belong.[13]
 III.
The case before us presents only two logical alternatives: either Bailey's conduct was alienation of affections or it was clergy malpractice. To the extent it was alienation of affections, the cause of action was abolished by §§ 6-5-331. To the extent it was clergy malpractice, Alabama has never before recognized that tort and should not start recognizing it today.
Without a doubt, Bailey's conduct was reprehensible. But the judicial system, like civil government itself, was not established to remedy every wrong and avenge every evil. Nor should the courts attempt to exercise jurisdiction they do not have or to intervene in areas where the legislature has specifically and lawfully prohibited them from doing so.
Bailey's actions lie outside the authority of this Court to remedy or avenge. If Mr. Faulkner would seek further redress, he should do so in the ecclesiastical court of his church or denomination (see, e.g., Matthew 18:15-18 and ICorinthians 5:12, 6:1-5), which may order Bailey to provide restitution that this Court may not order to ameliorate the financial hardship of the divorce. If Bailey were to refuse a church order requiring him to provide restitution, the church court could excommunicate him or apply other Biblical discipline as a sanction for that refusal.
If the actions of the church court were in the end also to fall short in some respect, Mr. Faulkner would still have one final and utterly reliable recourse — direct appeal to the One our Founding Fathers freely acknowledged as the Supreme Judge of the World (see Declaration of Independence).
[10] I refer to the behavior of the pastor and Mrs. Faulkner as "adultery" rather than a "consensual, sexual relationship" because I consider the latter expression a politically correct euphemism that obscures the gravity of their misdeed.
[11] For example, in response to nationwide efforts by homosexual activists to reduce the marriage covenant
between one man and one woman to a mere contract
between two (or more) people regardless of their sex, the Alabama Legislature reaffirmed its recognition of the institution of marriage as ordained by God rather than imagined by man by passing the Alabama Marriage Protection Act, Ala. Code 1975, §§ 30-1-19, as well as Act No. 2005-35, Ala. Acts 2005, which proposes the "Sanctity of Marriage Amendment" to the Alabama Constitution of 1901.
This proposed amendment, which recognizes marriage as "inherently a unique relationship between a man and a woman," was passed overwhelmingly by the Alabama Legislature (85-7-1 in the House and 30-0 in the Senate) earlier this year. It is scheduled to be voted on by the people in June 2006.
[12] In Nally a divided appellate court allowed the action to be maintained, but the California Supreme Court subsequently ordered that the Nally opinion be "decertified." Four years later the case reached the California Supreme Court, which refused to recognize a claim of clergy malpractice. Nally v. Grace Community Church of theValley, 47 Cal.3d 278, 763 P.2d 948, 253 Cal.Rptr. 97
(1988).
[13] See Samuel Ericsson, Clergymen Malpractice:Ramifications of a New Theory, 16 Val. U. L. Rev. 163, 176 (1981), and Ex parte G.C., 924 So.2d 651, 661
(Ala. 2005) (Parker, J., dissenting).