# Commonwealth ex rel. Attorney General et al. v. Pollitt.

(Decided March 1, 1935.)

EDWARD BLOOMFIELD, B. D. COUGHLIN, BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellants.

THOMAS D. SLATTERY for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Reversing

The court below denied an order seeking to enjoin appellee from practicing dentistry in Kentucky, and the commonwealth ex rel. appeals.

It was claimed that Dr. Pollitt had failed to comply with laws relating to the practice of dentistry, and, after an unsuccessful effort to have him indicted on the ground mentioned, this equitable action was begun by the Attorney General.

490

It is admitted that Dr. Pollitt on May 24, 1904, had complied with the laws then in effect relating to the practice of dentistry, and was certified as a licensed dentist; that Dr. Pollitt soon thereafter left Kentucky and went to Illinois, later to Ohio, where he continued to practice dentistry until some time in 1932, when he returned to Kentucky. It is also admitted that Dr. Pollitt has never renewed his certificate under the provisions of the act of 1912, and also that the act of 1904, under which he was registered, did not provide for annual renewal of license.

It was stipulated during the trial that no injunction had theretofore been asked or refused by any court; that certain witnesses had appeared before the Mason county grand jury in April, 1933, bearing testimony to the effect that for some time prior thereto Dr. Pollitt had been in the practice of dentistry in that county, that the grand jury had failed to return an indictment against him, and that he continued practicing, claiming that his 1904 certificate guaranteed to him the right to so do.

It is contended by appellant that section 9 of chapter 95, Acts 1912, section 2636-9, Ky. Stats. 1930, makes it mandatory upon a person regularly licensed in Kentucky to pay the annual renewal fee therein provided, notwithstanding he was a nonresident at the time or after the passage of the act of 1912. Appellee contends, first, that the action should not lie in equity, because Dr. Pollitt had been regularly licensed, and was not violating any law by practicing, and further that equitable relief should only be granted when it was made plain that the further practice of the profession or trade was detrimental to the welfare of the public. At this point it may be said that this suit was properly brought in equity, and is clearly based on the principle that, where the law appears to be inadequate, and where the general welfare of the public is involved, a court of equity will grant relief. The petition is sufficient both in form and substance, and the court below did not err in overruling defendant's demurrer thereto. See Ky. State Board of Dental Examiners v. Payne, 213 Ky. 382, 281 S. W. 188; Commonwealth ex rel. v. Brown, 239 Ky. 197, 39 S. W. (2d) 223, and other cases of similar import.

As to the laws involved there is no disagreement,

but quite a contrariety of opinion as to the meaning and effect of the section of the statute, supra. The act of 1904 (Acts 1904, c. 32, p. 89 [Ky. Stat. 1909, sec. 2641]), under which Dr. Pollitt was licensed, provided with respect to qualifying certificates:

"All persons hereafter receiving such certificate of qualification to practice dentistry or dental surgery in this State shall have same recorded in the office of the clerk of the county or counties in which he shall practice, and it shall be the duty of such clerk, upon presentation of said certificate * * *" to record same in a book to be kept for that purpose.

The section of the 1912 act and Statute (section 2636-9), the effect and meaning of which is brought sharply into question, provides:

"On or before the 31st day of December each year every dentist legally licensed to practice dentistry in this state shall transmit to the secretary of the said board of dental examiners his signature and address, together with the fee of one dollar ($1.00), and the number of his or her registration certificate, and receive therefor a renewal license certificate. Any license granted by said board shall be cancelled and annulled if the holder thereof fails to secure the renewal certificate herein provided for within a period of three months after December 31st of each year, provided any license thus cancelled may be restored by the board upon the payment of a fee of five dollars ($5.00) if paid within one year after such cancellation."

Dr. Pollitt did not renew his certificate within three months after December 31, 1912, nor did he take steps to have it restored within one year after its cancellation. The testimony discloses that Dr. Pollitt was holder of certificate No. 1050 issued by the board on May 24, 1904, and it was canceled by the board April 24, 1913. It was also shown that, until advised otherwise by the law officers of the state and by its own attorney, the board had been reinstating applications without regard to lapse of time, after such had been referred to the board and by that body considered.

Dr. Pollitt wrote the board's secretary in December, 1931, saying that he had lost his certificate and

requesting information as to the procedure necessary to obtain a duplicate. He was advised to make application for restoration and to furnish indorsements of the dental organization and state board in the state where he had last practiced. On January 9, 1932, after a request for proper blanks, Dr. Pollitt made application to practice in Kentucky, giving his address, signature, number of his certificate, and inclosing money order for $6, $1 for renewal fee, and $5 for penalty. This application was submitted to the five members of the board, and the same number voted against his reinstatement. He was advised of the result and asked for a reconsideration of the vote, which was granted, with the same negative result, and his remittance was returned.

In his application of January 9, 1932, Dr. Pollitt stated:

"I was not aware of the change in the law when it went into effect. Now that I have moved back to my home state I would be very glad to be put back into good standing."

There is, however, filed as Exhibit No. 3 a letter from him to the secretary of the board, of date 2-27-18, in which he wrote:

"I am writing you in regard to my Kentucky License No. 1050, as I have been out of the state for several years and didn't know until a year or so after the law was made that license had to be renewed every year. I have let it elapse. Now Doctor I wish you would please let me know what I have to do to have it renewed."

In reply to this he was advised that all licenses unrenewed under the 1912 act had been annulled and canceled; that he might apply for reinstatement, but in the meantime any attempt to practice before reinstatement would be in "violation of the law and subject to penalties." Nothing more came of this correspondence, in so far as is shown by the record.

As indicated, on a consideration of the pleadings and such facts as were developed, the lower court declined to grant an injunction. On appeal the appellant pitches the case squarely on the proposition that the

act of 1912 with relation to renewal of certificates applied to all dentists theretofore licensed and registered, concerning which claim, with regard to resident dentists, there seems to be no dispute, and applies with equal force to nonresidents who had been registered in Kentucky prior to the act of 1912.

The appellees contend that, if section 9 of the act of 1912 be construed to be retroactive (which construction is not admitted), it can have no extraterritorial effect, on the theory that for the lawmaking body of Kentucky to undertake to "regulate or supervise" nonresident dentists would be far beyond its powers, and hence as to such is unconstitutional and void.

It is further argued that, if the act be held to give the board power to cancel the license of a nonresident, without notice, such construction is in conflict with the spirit manifested in section 2636-6, Ky. Stats. 1930, which provides for notice and hearing, with appeal to the Governor, in cases where a license is sought to be revoked for a violation of the law, or of some lawful rule of the board.

The main issue is whether or not Dr. Pollitt can be deprived of his right to return to Kentucky in 1932 and resume the practice of his profession because of his failure to comply with the statute of 1912, requiring the payment of the annual renewal fee.

We shall first give regard to the two statutes in question to ascertain what the Legislature intended by the act of 1912, observing particularly sections 3, 6, and 9 thereof (Ky. Stats. 1930, secs. 2636-3, 2636-6, 2636-9), since it is contended by appellee that by the conjunctive reading of sections 3 and 9 it must be concluded that section 9 was not intended to have application to theretofore registered dentists. The language employed in section 9 does not seem to be susceptible of this construction. It is true, as argued, that section 3 of the act contains an exception. That is the chief section providing the manner and method whereby a license may be procured. It prohibits the practice of dentistry "in this state" by any one without first procuring the necessary certificate. After providing for registration of the license, there appears in the section referred to (section 2636-3) the following:

"And this provision applies to all persons whether they have heretofore practiced dentistry or not in this state, except such persons as have been heretofore licensed and registered."

The effect of this quoted part of the section exempted from examination and registration dentists who had theretofore been licensed and registered under prior laws. This was a continuation in effect of the act of 1904. The construction we have suggested was given the law as it appeared in the 1904 act in Com. v. Craig, 144 Ky. 249, 137 S. W. 1083; Com. v. Nevill, 92 S. W. 550, 29 Ky. Law Rep. 108. Section 9 is plain, unambiguous, and, to determine its meaning, there is no necessity to bring into use any of the technical rules of statutory construction. It means, and we believe was fully intended to mean, that every dentist regularly licensed before and after the passage of the act should be required at his own peril to renew his license each and every year within the periods fixed by the act. Words in a statute should be construed so as to give them their popular and general meaning, unless a contrary intention appears from a reading of the entire act. The use of the word "every" as applied to those who are expected to comply with the law, that is, the word as used in the phrase "every dentist legally licensed to practice dentistry in this state," undoubtedly meant to include those who had been licensed under any and all previous acts. There is neither exception nor proviso contained in section 9, and it would require the court to go a long way to have it hold that the act only applied to those who sought license after the effective date of the 1912 act. This construction of the act is not at all difficult to reach. It is fully justified by the decisions of this and other courts. Com. v. Basham, 101 Ky. 170, 40 S. W. 253, 19 Ky. Law Rep. 336; Wilson v. Com., 119 Ky. 769, 82 S. W. 427, 26 Ky. Law Rep. 685; Dent v. W. Va., 129 U. S. 114, 122, 9 S. Ct. 231, 32 L. Ed. 623; Collins v. Texas, 223 U. S. 288, 32 S. Ct. 286, 56 L. Ed. 439; Gray v. State of Connecticut, 159 U. S. 74, 15 S. Ct. 985, 40 L. Ed. 80; Tattersall v. Slayder, 1 Ch. D. W. 1928; Butcher v. Maybury (D. C.) 8 F. (2d) 155.

That the Legislature had the power to make the act applicable to all who in the future desired to practice is too well settled for comment. State of Minnesota

v. Havorka, 100 Minn. 249, 110 N. W. 870, 8 L. R. A. (N. S.) 1272, 10 Ann. Cas. 398; Com. v. Alger, 7 Cush. (Mass.) 53, and cases cited supra.

Counsel for appellee contends that to give the asserted effect to this statute makes it harsh and unreasonable, and, if carried out, results in taxing a nonresident for engaging in practice outside the state, and therefore interferes with rights and privileges as guaranteed him under the Constitution.

If the act should be given such construction as to require one who had been licensed in Kentucky to pay a renewal fee for practicing dentistry in Ohio, or any other state, then such construction would make the section unconstitutional as to nonresidents. However, we are not required, nor will we attempt, to apply any such meaning. The first mentioned section (section 2636-3) which is the one intended to qualify the applicant for practice, providing for examination by the board, payment of examination fee, etc., provides:

"No person shall practice dentistry in this state or attempt to do so after the passage of this act without first applying for and obtaining a license for such purpose from the * * * state board * * * and registering such license as herein provided."
Section 2636-4 provides:

"Every person licensed to practice dentistry in this state by the * * * board of dental examiners, as herein provided, shall before beginning the practice of dentistry, cause said license to be registered with the county clerk of the county or counties in which such person desires to engage in the practice of dentistry. * * *"

Section 2636-5 provides in part:

"The license to practice dentistry herein provided and the certificate of registration, shall at all times be displayed in a conspicuous place in his or her office wherein he or she shall practice the profession of dentistry. * * *"

It seems clear from a reading of these sections that they, perhaps together with some other co-ordinating sections, are the chief ones providing the regulations for the practice of dentistry in this state. In each one

reference is made to the practice in this state, or in the county of the state where the holder engages in the practice of his or her profession. However, when section 2636-9 is read, it seems clear that it was not intended by the makers of the law to thus confine its application. The pertinent language used is:

> "On or before the 31st day of December each year every dentist legally licensed to practice dentistry in this state shall transmit to the secretary of the said board"

the renewal fee.

The statute does not say that every dentist engaged in practice or every dentist practicing in this state shall renew his or her license, but the words used are, "every dentist legally licensed to practice dentistry in this state" shall renew his certificate, and it may be very readily concluded that the Legislature by the change of phraseology intended that the provisions of the section in question should apply to every dentist whose name appeared on its registry. And, when we look to the purpose of this renewal, the issuance of the renewal certificate, and the payment of the renewal fee, it becomes more evident that it should be so construed as to apply to all registered dentists, whether they were engaged in the practice in Kentucky or any other state.

One strong reason why the statute should apply to nonresidents theretofore legally licensed in this state arises from the application of what is known as the reciprocity provisions of our statute. Sections 2636-15 to 2636-17 deal with this feature of the law, and by them provision is made whereby any one who is a licensed practitioner in Kentucky desiring to practice in another state may receive a special certificate, which will permit the applicant to practice without examination in a state recognizing reciprocity. Under reciprocity or comity agreements, a dentist registered in another state may enter and engage in practice in Kentucky. In both instances examination is waived. Under this arrangement of reciprocity, comity, or grace, whichever it may be called, the practitioner is in fact a licensee of the state granting the license originally. This being so, he or she should at all times be willing to do anything and everything required of the licensing state, else by failure he or she might no longer be qualified to engage

in practice. If one licensed by the Kentucky board should be practicing in a neighboring state under the rules of comity, and should fail to renew his or her certificate as directed by our laws, and should be dropped from the roster for such failure, his or her right to practice in the neighboring state would at once cease, because of the fact that the licensee would no longer be a qualified dentist in Kentucky. It is not intended to say that Dr. Pollitt belongs to the class being discussed. He may not be, but the thought is advanced to indicate, if it does, that the construction here given is correct, and that the General Assembly intended section 2636-9, Ky. Stats. 1930, to have application to all theretofore registered dentists, including the nonresident. Looking for a moment to the practical working of the law, let us assume that one was legally registered ten years ago, and had practiced for one or two years, and then temporarily abandoned the practice, and had also failed to renew, thereby becoming suspended; he then made application to the board for renewal, and was refused, solely on the ground of suspension due to his own act. Then take a case where the licensee had moved to another state, and lived there ten or twelve years, either practicing dentistry or, mayhap, engaging in some other business, and had failed to renew. No one would say that, because the one had been a nonresident, he should be permitted to be reinstated and the other refused renewal because he had been in the interim a resident of Kentucky.

However, if it should be that the statute is subject to the construction we have indicated, counsel says that it is nevertheless violation of both the state and Federal Constitution, because to apply the renewal statute to a nonresident is to tax one doing business in another state. 37 C. J. 173, sec. 13, is quoted in part as follows:

"* * * A state legislature may, either in the exercise of the police power or for the purposes of revenue, require licenses or impose license taxes on occupations or privileges within the limits of the state."

Citing Hager v. Walker, 128 Ky. 1, 107 S. W. 254, 32 Ky. Law Rep. 748, 15 L. R. A. (N. S.) 195, 129 Am. St. Rep. 238, and other cases holding to the principle that the state in taxing privileges or occupations, either in furtherance of its police power, or for raising

revenue, is limited in the exercise of its power to the confines of the state, no case or text is cited which meets the direct situation here presented. In the case of People v. Equitable Trust Co., 96 N. Y. 387, the court, after holding that the state had ample power to tax trades, associations, and other associations carrying on business within the state, said:

> "Non-residents' property having no legal situs here, and business not carried on here, are beyond the jurisdiction of our State and are not the subjects of taxation here."

There is no doubt at all as to the soundness of the principle enunciated in the cases quoted, and which, as may be observed, has frequently had the sanction of this court; however, the section of the act under discussion requires neither a tax on property nor for carrying on business in this state, and quite clearly is not an attempt to tax an occupation engaged in by one in another state.

It must not be overlooked that the initial certificate is the authority which permits the holder to engage in the practice of dentistry, and this continues as his authority for all times, subject, of course, to any terms or conditions that the Legislature may or might add. The renewal certificate is only an evidence of his right to so continue to practice. It may in this respect be clearly distinguished from the original license. He may renew or not renew at his will. The board cannot compel him to renew if he chooses to do otherwise.

In order to bring out just what our conception of the renewal fee is, its purpose and effect, and the character of the payment for the fee, we shall quote from what appears to be a well-considered case from another jurisdiction. In the case of De Gruy v. Louisiana State Board of Pharmacy, 141 La. 896, 75 So. 835, the plaintiff obtained a writ enjoining the state board from collecting a $1 renewal fee for one of his assistants. He had made two contentions, first, that the act in question did not require a payment of such fee for an assistant, and, second, if the act did so require the payment, it was unconstitutional, because the result of the taxing power of the state. The court held contrary to his contentions on the first point, and likewise on the second, and in doing so went into details as to the nature of the renewal fee. The court said:

"The plaintiff's objections to the constitutionality of the law are all founded upon the assertion or premise that the annual charge of $1 for the renewal of the certificate of every registered pharmacist and qualified assistant is a license tax. If that is a false premise, there is nothing in the contention—in fact there is then no contention—that the law is unconstitutional. And our opinion is that the plaintiff is mistaken in assuming that this charge of $1 to be paid annually by every registered pharmacist and qualified assistant, for the renewal of his certificate, is a license tax. It is a fee charged for a service rendered in protecting, not only the public against the malpractice of pharmacy, but the profession of the pharmacists themselves against impostors. The levying and collecting of this fee of $1 annually from every registered pharmacist * * * is not done in the exercise of the taxing power of the state, but in the exercise of the police power. The purpose of the charge is not to derive a revenue, but to pay the expense of carrying on the police regulation provided by the statute. It is true the labor of issuing the renewal certificate is, of itself, not worth $1, or does not cost the board $1. But the functions of the board are something more than swapping dollars. The dollar collected annually from every registered pharmacist and qualified assistant, in consideration for the renewal of his certificate, is expended not only for maintaining the office of the board and paying for the clerical work, but also for investigating complaints against and correcting the evil practice of having nonregistered, nonqualified and incompetent persons compounding dangerous drugs. The regulation of matters of such vital importance to the health and safety of the public as that is surely within the police power of the state."

The renewal fee is the same under our law, and hence the description of just what it is and is for fits the case here perfectly. We quite agree also with the court's conclusion that the fee charged is not for the purpose of raising revenue, is not the child of the taxing power of the state, but is incident to the police power, and that as such it does not come within the prohibitions of either the state or Federal Constitution, unless it be discriminatory, or on its face appears un-

500

reasonable. Ward v. Maryland, 12 Wall. 418, 20 L. Ed. 449; Wiggins Ferry Co. v. East St. Louis, 107 U. S. 365, 2 S. Ct. 257, 27 L. Ed. 419; Standard Oil Co. v. Com., 119 Ky. 75, 82 S. W. 1020, 26 Ky. Law Rep. 985; Williams v. City of Bowling Green, 254 Ky. 11, 70 S. W. (2d) 967; City of Mayfield v. Carter Hdw. Co., 192 Ky. 381, 233 S. W. 789; Mansbach Scrap Iron Co. v. Ashland, 235 Ky. 265, 30 S. W. (2d) 968; Duncan v. Missouri, 152 U. S. 377, 14 S. Ct. 570, 38 L. Ed. 485.

There is no question here, nor could there be any, as to the power of the state to require the renewal fee of the resident practitioner. When we look to the purpose of it, as indicated above, we can see no just reason why it should not apply to the nonresident licensee, and, if it is made to do so, there is no discrimination. To hold otherwise would work a discrimination in favor of the nonresident as against the resident dentist.

The point may be made somewhat clear when we take up another contention of appellee, that, if the law be held to apply to nonresidents, its application is harsh and unreasonable, because the licensee is entitled to notice and hearing before the board, as is provided in cases for the revocation of a license by the board. We do not take this view, for the reason that in the case of revocation the process is put in motion by the board, which must prefer charges. In the case of suspension, the process is not only put in motion by the licensee, but he alone has control of the process up until such time as the license is canceled, not by any action of another, but altogether by his, the licensee's, nonaction. He alone starts the process, and he alone allows it to come to the point of completion. The licensee must not overlook the fact that the renewal is for benefit of himself. The renewal is his guaranty of good standing, somewhat like the annual dues in a social or fraternal organization. It is his evidence of fellowship and at the same time a means whereby the board may keep track of him, and at all times be enabled to know that he desires to keep in fellowship, whether he be in or out of the state.

The construction we have given to the section in question will not preclude the appellee from making application for reinstatement under the provisions of section 2636-15 et seq., Ky. Stats. 1930, which provides for clinical examination. This, of course, being suggested

on the assumption that appellant was licensed after examination, in a state which has reciprocity agreements with Kentucky.

Our conclusion is that the court below erred in denying the injunction, and therefore the judgment of the lower court is reversed, with directions to grant the relief sought by plaintiff.

Judgment reversed.