41 So.2d 172
### KNIGHTON et al. v. KNIGHTON.
6 Div. 728.

Supreme Court of Alabama.
April 14, 1949.

Rehearing Denied June 30, 1949.

Geo. Rogers, of Birmingham, for appellant Wm. L. Knighton.

Chas. W. Greer, of Birmingham, for appellant Meadows.

Wilkinson & Skinner, of Birmingham, for appellee.

LIVINGSTON, Justice.

This appeal is from a decree of the lower court overruling the separate demurrers of the two respondents to the bill of complaint. The bill is one with a double aspect: in one aspect the complainant, the wife, seeks separate maintenance from the respondent husband; while in the other aspect, the wife seeks an injunction to restrain both respondents, the husband and his alleged paramour from further pursuing or carrying on their alleged improper relations with each other.

It is alleged in the bill of complaint, in substance, that the complainant, Mrs. Bertha S. Knighton, and respondent William L. Knighton were married to each other on October 18, 1921, and lived together as man and wife until May 1947; that they have a comfortable, nicely furnished residence in Birmingham, Alabama, which served as their home until they separated; that, in December 1946, complainant became aware of the fact that her husband and the respondent Mrs. D. M. Meadows were engaged in, or carrying on, a clandestine love affair; that she confronted her husband with these facts and that he readily and fully admitted them to be true; that from December 1946 until May 1947, complainant made every effort to aid and assist the husband in breaking away from

the bonds and ties by which Mrs. Meadows held him, but without avail. She further alleges "that after she and respondent William L. Knighton stopped living together as man and wife, and concluded their marital status by not living together, respondent continued" his affair with Mrs. Meadows, and has steadfastly refused to abandon it; that the respondents are now, and have been for a long time, living in adultery, and that now Knighton is wholly unable to extricate himself from the subtle entanglement of Mrs. Meadows' charms.

Complainant further avers that she is now occupying the home, above referred to, and that respondent Knighton is providing her with the sum of $100.00 per month; that she has no estate or income other than that provided by Knighton, and that such provision is wholly inadequate to support and maintain her in the station in life to which she is accustomed; that Knighton is gainfully employed and earns approximately $550.00 per month, and that the legal title to the home is in him; that he has an automobile and $3000.00 in United States Government bonds.

Complainant prays that "the court will award her a reasonable sum for her maintenance and support pending a conclusion of this litigation and on final hearing that she be allowed a reasonable sum in the form of permanent alimony for her maintenance and support, together with a reasonable sum to be paid to her solicitors for representing her in this cause.

"Complainant prays for the following additional relief, viz:

"That a writ of injunction be issued against the respondent Mrs. D. M. Meadows, enjoining her from receiving support, money, gifts, presents or other things of value from respondent, William L. Knighton, either directly or indirectly, and from visiting him, associating with him, meeting him clandestinely, having him visit her in her home, riding with him or otherwise associating with the said William L. Knighton, the husband of complainant, and from going with him on trips in or out of the state and that Mrs. D. M. Meadows, be further enjoined either in person or by and through others from writing to or communicating with the said William L.

Knighton by word, note, or telephone, or doing or causing to be done directly or indirectly any act which would prevent or tend to prevent the said William L. Knighton from giving to the complainant the companionship, conjugal relationship and support, and affection to which she as his wife is entitled.

"Your complainant would further pray that the respondent William L. Knighton, be enjoined from supporting or giving gifts, presents or things of value to the respondent Mrs. D. M. Meadows, also from associating with, going with, dating, keeping company with, seeing and talking to the respondent Mrs. D. M. Meadows, and that the relationship now established between the respondents, William L. Knighton and Mrs. D. M. Meadows, be severed and broken, and that the said respondents further be enjoined from reestablishing their present relations; that the respondent, William L. Knighton be enjoined from going to the residence of respondent, Mrs. D. M. Meadows, visiting her there or sleeping at said residence and from making trips with the respondent, Mrs. D. M. Meadows, or contracting (contacting) her by telephone, letter or other means of communication.

"Your complainant prays that upon final hearing of this matter that the respondent, William L. Knighton, be required to pay to the complaint a reasonable sum for her support, upkeep and maintenance, that she be given title to the home place and residence where she is now living and she would pray for such other support and maintenance as would enable her to attain the standard of living to which she is now, and has been, during the marriage of the complainant and respondent accustomed," and for general relief.

■ That phase or aspect of the bill praying for separate maintenance of complainant is not subject to any ground of demurrer interposed thereto, and the same was properly overruled.

■ Obviously, that phase or aspect of the instant bill seeking injunctive relief is patterned on our comparatively recent case of Henley v. Rockett, 243 Ala. 172, 8 So.2d 852, 853. Mr. Justice Bouldin writing for this Court in the Henley case, began his opinion by saying:

"Broadly speaking this may be styled a bill in equity by a married woman to enjoin another woman from alienating the affections of complainant's husband."

He further said:

"Touching jurisdiction in equity certain well-known rights come into view. Marriage is contractual, a covenant relation, resulting in the martial union in which each spouse has the unquestioned right to all the fealties on the part of the other, known as consortium.

"In Woodson v. Bailey, 210 Ala. 568, 98 So. 809, 810, an action for damages at law for the alienation of affections, it was said: 'These rights have been defined in this form of action to include the person, affection, society, and assistance. The terms "service," "aid," "fellowship," "companionship," "company," "co-operation," and "comfort" have also been employed in defining those mutual and special rights growing out of the marriage covenant. The loss of consortium is the loss of any or all these rights. 12 C.J. 532; 30 C.J. 1123, § 977; 2 Words & Phrases, First Series, page 1453 [8 Words and Phrases, Perm.Ed., page 709]; 13 R.C.L. 507'.

"It is now well settled here and elsewhere that injunctive relief is not limited to the protection of property rights, but extends to the protection of personal rights in many fields where no adequate remedy at law is available. Indeed, it may be truly said the protection of property rights derives from the value of property to the owner, supplying the means, the comforts, and many of the incidents of a fuller life. Try-Me Bottling Co., et al. v. State, 235 Ala. 207, 178 So. 231; State v. Ellis, 201 Ala. 295, 78 So. 71, L.R.A.1918D, 816; [Ex parte Badger, 286 Mo. 139, 226 S.W. 936] 14 A.L.R. [286] 295.

"On these premises it has been held that the hand of the court of equity may be extended to prevent an intrusion of a third person into family affairs, destructive of the consortium between spouses.

" 'One spouse may enjoin a third person from alienating the affectings of the other spouse in a proper case.' 27 Am.Jur. 121, § 520.

"This text is supported by Hall v. Smith, 80 Misc. 85, 140 N.Y.S. 796; Ex parte Warfield, 40 Tex.Cr.R. 413, 50 S.W. 933, 76 Am.St.Rep. 724; Smith v. Womack, Tex.Civ.App., 271 S.W. 209; Buell Stark v. Hamilton, 149 Ga. 227, 99 S.E. 861, 5 A.L.R. 1041; Annotation 108 A.L.R. 429.

"The most widely considered case coming to our attention is Snedaker v. King, 111 Ohio St. 225, 145 N.E. 15, 17, by the Supreme Court of Ohio."

In the case of Snedaker v. King, 111 Ohio St. 225, 145 N.E. 15, 16, referred to by Mr. Justice Bouldin in the Henley case, supra, the majority opinion, in denying the injunction, said: "The decree in this case is an extreme instance of government by injunction. It attempts to govern, control, and direct personal relations and domestic affairs. Among other restrictions placed upon the defendant by this decree is that of remaining away from any place where plaintiff's husband may be, and from interfering with plaintiff's efforts to communicate with her husband, and with her efforts to regain his love, esteem, support, and conjugal relation. It would be only a little more extreme if the husband had been made a party defendant, and a mandatory injunction decreed requiring him to discharge all the duties of companionship, affection, love, and all other obligations, legal and moral, assumed by him when he entered the conjugal relation." And in dissenting Chief Justice Marshall said: "It must be kept clearly in mind in a discussion of this case that the husband is not a party to the suit, and that the wife, Grace King, brings the action solely against the vampire, Jessie L. Snedaker."

We know of no case in which even an attempt has been made to require a husband by the process of mandatory injunction to discharge the duties of companionship, love, affection and other obligations assumed by him when he entered the conjugal relation. So far as we know, courts of equity have never presumed to exercise such power. And we have been cited to no case, nor has our search revealed one, in which the process of injunction has been employed to restrain an erring husband from doing those things calculated to disrupt the marriage relation.

Moreover, the case at bar presents the anomalous situation in which the wife refuses to longer live with the husband, or, at least, agrees not to do so, and sues for separate maintenance, and at the same time seeks to restrain the husband from associating with another woman. And if he can be restrained from seeing one woman, why not all women. It intrigues the imagination to contemplate the lengths to which such a power once attempted may be carried, and the difficulty to be encountered in the enforcement of such a decree. Considerations of policy and expediency forbid a resort to injunctive relief in such a case.

The instant bill alleges, in effect that, by mutual consent, the husband and wife separated some six months before the bill was filed. After such separation, the wife is entitled to nothing more than separate maintenance, and in which the courts will protect her in full measure. We are not unmindful of the allegation that the respondents are living in adultery, but ordinarily equity will not enjoin the commission of a crime.—Try Me Bottling Co. et al. v. State, 235 Ala. 207, 178 So. 231.

The case against Mrs. Meadows is clearly not within the rule laid down in Henley v. Rockett, supra. In that case the husband and wife were still living together. There was no suit for separate maintenance. There the allegations of the bill are to the effect that the wife was still trying to preserve the marriage, not that she had abandoned it: that Mrs. Henley was attempting to gain the affection of her husband and to destroy complainant's marriage by the unlawful exercise of her feminine wiles and charm upon an old man whose mind and will had become affected by the use of strong drink. The instant bill contains no such allegations. In the case at bar, the husband and wife had agreed to live separate and apart from each other. However reprehensible his conduct may have been, it is clear enough that his love and affection for his wife had ceased to exist, and it would be vain and useless to attempt its restoration by injunction. Sound policy and expediency dictate otherwise.

■ The demurrer of both respondents to that aspect of the bill seeking injunctive relief should have been sustained.

Affirmed in part, and in part reversed and remanded.

BROWN, SIMPSON and STAKELY, JJ., concur.