67 So.2d 782

### CORTE v. STATE.
I Div. 525.

Supreme Court of Alabama.
Oct. 29, 1953.

Hubert M. Hall, Bay Minette, for appellant.

Si Garrett, Atty. Gen., and George O. Miller, Asst. Atty. Gen., for appellee.

CLAYTON, Justice.

This is an appeal from an interlocutory decree of the circuit court of Baldwin County, in equity, overruling a motion to dissolve, and sustaining a temporary injunction. The appeal is authorized by Sec. 757, Tit. 7 of the Code of Alabama 1940. The bill of complaint alleges in substance that, at the time of filing and for a period of time immediately preceding the filing thereof, appellant, at Loxely, Alabama, was engaged in the business of producing, buying for resale, packing, selling, and shipping, and sold, and shipped from Loxley, Alabama, vegetables of the type and variety governed by the provisions of Act No. 977 of the Legislature of Alabama of 1951, p. 1650, Code 1940, Tit. 2, § 315(9) et seq.; that he did refuse to allow authorized agents or inspectors of the State Commissioner of Agriculture, entrance into the premises of his establishment for the purpose of inspecting and examining packages of vegetables to determine whether said packages of said produce were in compliance with the enforcement provisions of said Act No. 977. The bill further avers that it is necessary for said agents and inspectors to enter said establishment for the purpose of enforcing the provisions of said law, and that, without access to such premises, the Commissioner cannot effectively enforce the provisions of such law, or perform the duties placed upon him by the provisions thereof. The bill alleges further that the conduct of the respondent, in denying the agents or inspectors of the Commissioner access to the premises of appellant, has prevented the Commissioner from enforcing the provisions of said Act No. 977, and that it is necessary and vital to the enforcement of this law that said agents and inspectors enter said establishment, which establishment is used for receiving, buying, packing, selling, and shipping vegetables of the type and variety governed by the provisions of said law, and that complainant has no adequate remedy at law to compel appellant to allow agents or inspectors of the State

Commissioner of Agriculture to enter his premises, although they have the legal right so to do.

Act No. 977 of the Legislature of 1951, is in the following language:

"An Act

"To provide for the inspection and grading of fresh fruits and vegetables grown in Alabama; prescribing the standard grade or grades for such fruits and vegetables; providing for the administration of the Act by the Commissioner of Agriculture and Industries and the Department of Agriculture and Industries; and prescribing penalties for violations of the Act.

"Be It Enacted by the Legislature of Alabama:

"Section 1. Declaration of Purpose. —The purpose of this Act is to improve the grade and quality of fresh fruits and vegetables produced in Alabama in order that they may sell in competition with those produced in other areas. The fruit and vegetable industry is of great economic importance not only to the farmers of Alabama but to the general economy of the State and it has been found that fruits and vegetables produced and packed in Alabama are generally of substandard quality. Several neighboring states have enacted laws providing for shipping point inspection and grading of fruits and vegetables which laws have resulted in improving the quality and grade of fresh fruits and vegetables produced, packed and shipped from these states which has been to the economic gain and benefit to producers. Therefore, it is deemed for the best interest of the agricultural economy of the State of Alabama to regulate the shipping and packing of fresh fruits and vegetables by requiring and providing shipping point inspection for such agricultural commodities.

"Section 2. Definitions.—For the purpose of this Act—(a) The term 'person' means any individual, firm, partnership, corporation or association. (b) The term 'grower' means a bona fide producer of fresh fruits and vegetables either by self, or by tenant, sharecropper or by hired person. (c) The term 'Closed package' means any basket, hamper, crate, carton, bag or other container used in the marketing of fresh fruits and vegetables if such container is closed with a lid of any description. (d) The term 'fresh fruits and vegetables' shall include green corn, tomatoes, Irish potatoes, sweet potatoes, peaches, strawberries, cucumbers (sold for slicing purposes) and cabbages.

"Section 3. Official standards for fruits and vegetables grown in the State of Alabama, when packed in closed packages shall be the same as those issued by the United States Department of Agriculture and/or standards issued by the State Department of Agriculture and Industries.

"Section 4. Every closed package of fresh fruits or vegetables grown in the State of Alabama, before the same shall be offered for sale, shall be stamped, labeled or otherwise plainly marked (bags may be tagged) with: (a) The name and address of the grower or packer or the person by whose authority the fruit or vegetable was packed. (b) The grade of fresh fruit and vegetables contained in the package. (c) The markings as prescribed in this section shall be in letters or figures not less than one-half ($\frac{1}{2}$) inch in height, except in consumer packages which shall be marked with letters comparable to the size of the package.

"Section 5. When the State Board of Agriculture and Industries determines that it is for the best interest of producers of fruits and vegetables in a certain area of the State of Alabama and the Board of Agriculture and Industries determines that a better quality and grade of fruits and vegetables will be produced by requiring inspection and grading of such fruits and vegetables the State Board of Agriculture and Industries shall have authority

to require that every closed package containing fresh fruits and vegetables shall be, before the same is transported into, within or out of the State of Alabama, subject to Federal and/or State inspection in accordance with the standard grades established in Section 3 of this Act; that is to say, the State Board of Agriculture and Industries shall have authority to require Federal and/or State inspection of fruits and vegetables and shall further have authority to designate the area in which such inspection requirements shall apply.

"Section 6. It shall be unlawful for any person to sell, offer for sale, expose for sale or transport for sale any fresh fruits and vegetables in any closed package which fails to bear the statements as required in Section 4 of this Act, or if the contents of the package fail to comply with the markings thereon, provided, that none of the provisions of Sections 3, 4 or 5 shall apply to any fruit or vegetable for canning, freezing, preserving or other method of processing provided, however, that the State Board of Agriculture and Industries shall have authority when it finds that it is for the best interests of producers of fruits and vegetables in any area of the State of Alabama to require that fruits and vegetables grown in such area for canning, freezing, preserving and all other methods of processing shall be subject to the provisions of Sections 3, 4 and 5 of this Act.

"Section 7. The Commissioner of Agriculture, through any designated division of the Department of Agriculture and Industries shall be charged with the enforcement of the provisions of this Act and for that purpose shall have the power and authority to: (a) enter and inspect personally, or through any authorized agent or inspector, every place within the State of Alabama where fresh fruits or vegetables are produced, packed, stored for sale, shipped, offered for sale or sold, and to inspect such places, and all fresh fruits and vegetables, containers, records and equipment found in any such places. (b) certify to growers, shippers and other financially interested parties the grade, quality and condition of fresh fruits or vegetables as provided in this Act; and to charge reasonable fees designed to cover the cost of these services, which fees, together with all money collected in the enforcement of this Act must be deposited in the Agricultural Fund (Shipping Point Inspection account) and shall be reexpended by him in carrying out the provisions of this Act. (c) promulgate rules and regulations not inconsistent with the provisions of this Act which rules and regulations shall have the full force and effect of law.

"Section 8. Every person, who by themselves, their agents, or employees, violates any of the provisions of this Act shall be deemed guilty of a misdemeanor, and shall upon conviction thereof be punished as prescribed by law.

"Section 9. The provisions of this Act are hereby declared to be severable. If any of its sections, provisions, exceptions, clauses, phrases or parts be held unconstitutional or void, the remainder of this Act shall continue in full force and effect, it being the legislative intent now hereby declared, that this Act would have been adopted even if such unconstitutional or void matter had not been included therein.

"Section 10. This Act, upon passage shall take effect on and after January 1, 1952.

"Approved September 12, 1951.

"Time: 6:56 P.M."

The motion to dissolve the temporary injunction challenges the equity of the bill, stated in various ways, and seriously argues for reversal on two grounds. First, that the Commissioner of Agriculture had not taken formal action under the provisions of Sec. 5 of the Act to require the grading of fruits and vegetables in the area in which appellant's fruits and vegetables were grown. The second point argued by

appellant for a reversal of the case, is that the injunction was issued to prevent the commission of an alleged criminal offense, and that the penal provisions of the Act provide an adequate remedy at law.

It is conceded that the motion to dissolve the temporary injunction tests the equity of the bill. Tit. 7, Sec. 1052, Code of Alabama, 1940; Woodward v. State, 173 Ala. 7, 55 So. 506; Fuqua v. Spry Burial Ins. Co., 254 Ala. 189, 47 So.2d 817.

No question is raised in the pleadings as to the constitutionality of the Act being considered.

▇▇▇ As to the first proposition argued by appellant, pertinent provisions of the Act are:

Section 4 of the Act requires that every package of fresh fruits or vegetables grown in Alabama, before same shall be offered for sale, shall be stamped, labeled, or plainly marked with the name and address of the grower, and the grade of fresh fruit and vegetables in the package, * * * in letters not less than ½ inch in height * * *.

Section 6, provides that it shall be unlawful for any person to sell, offer for sale, expose for sale, or transport for sale any fresh fruits and vegetables in any closed package which fails to bear the statement as required in Section 4 of this Act. * * *.

Section 7, provides that the Commissioner of Agriculture, through any designated division of the Department of Agriculture and Industries shall be charged with the enforcement of the provisions of this Act and for that purpose shall have power and authority to: (a) Enter and inspect personally, or through any authorized agent or inspector, every place within the State of Alabama where fresh fruits or vegetables are produced, packed, stored for sale, shipped, offered for sale or sold, and all fresh fruits·and vegetables, containers, records and equipment found in any such places * * *.

Section 8, provides that "every person, who by themselves, their agents, or employees, violates any of the provisions of this Act shall be deemed guilty of a mis-

demeanor, and shall upon conviction thereof be punished as prescribed by law." Following the rule that where the language of a statute is plain and unambiguous, it should be given the meaning therein plainly expressed, we are led to the conclusion that the right of the Commissioner of Agriculture to inspect for compliance with the stamping and labeling provisions of Sections 4, 6 and 7 of the Act, became effective upon the passage of the Act by the Legislature and its signing by the Governor, without the necessity of any action by the State Board of Agriculture and Industries or the Commissioner of Agriculture. State v. Praetorians, 226 Ala. 259, 146 So. 411; Abramson v. Hard, 229 Ala. 2, 155 So. 590; State v. Tuscaloosa Building & Loan Ass'n, 230 Ala. 476, 161 So. 530, 99 A.L.R. 1019.

▇▇▇ We consider now the proposition that the injunction was issued to prevent the commission of an alleged criminal offense, and that the complainant (appellee) has an adequate remedy at law by criminal prosecution against appellant. This is the truly serious question raised on this appeal. Section 8 of the Act does provide that a violation of any of the provisions of the Act constitutes a misdemeanor, so the first pertinent question which confronts us is whether or not the commission of an alleged criminal act may properly be enjoined. The principle upon which numerous exceptions have since been applied, contained in the early New York case of Attorney General v. Utica Insurance Co., 2 Johns.Ch., N. Y., 371, was expressed by Chancellor Kent as follows:

"If a charge be of a criminal nature, or an offence against the public, and does not touch the enjoyment of property, it ought not to be brought within the direct jurisdiction of this court, which was intended to deal only in matters of civil right, resting in equity, or where the remedy at law was not sufficiently adequate. * * *."

Our recent cases have restated the general principle as follows: "Ordinarily equity will not enjoin the commission of a crime." Knighton v. Knighton, 252 Ala. 520, 41 So.2d 172, 175; Try-Me Bottling

Co. v. State, 235 Ala. 207, 178 So. 231; Farrell v. City of Mobile, 229 Ala. 294, 156 So. 635; Pike County Dispensary v. Mayor, etc., Brundidge, 130 Ala. 193, 30 So. 451.

The same principle was stated in the Try-Me Bottling Co. v. State case, supra [235 Ala. 207, 178 So. 233], as follows:

"Our decisions recognize the general rule that courts of equity have no jurisdiction to enjoin the commission of offenses against the criminal laws of the State. * * *"

However, this court has held in the case of Henley v. Rockett, 243 Ala. 172, 8 So.2d 852, 853, Mr. Justice Bouldin writing for the court:

"It is now well settled here and elsewhere that injunctive relief is not limited to the protection of property rights, but extends to the protection of personal rights in many fields where no adequate remedy at law is available. Indeed, it may be truly said the protection of property rights derives from the value of property to the owner, supplying the means, the comforts, and many of the incidents of a fuller life."

citing: Try-Me Bottling Co. v. State, supra, and State v. Ellis, 201 Ala. 295, 78 So. 71, L.R.A.1918D, 816.

Both the above cases of Knighton v. Knighton, and Henley v. Rockett, involved efforts of a wife to obtain injunctive relief against alienation of affections of the husband by another woman. While the issues were different from those in the case now before us, they serve to illustrate the principle that each case for injunctive relief must be considered in the light of the rule that an injunction, whether permanent or temporary, cannot, as a general rule, be sought as a matter of right, but the power to grant or refuse it rests in the sound discretion of the court, under the circumstances and facts of the particular case. 43 C.J.S., Injunctions, § 14, page 420; Shelton v. Shelton, 238 Ala. 489, 192 So. 55; Dean v. Coosa County Lumber Co., 232 Ala. 177, 167 So. 566; Boatwright v. Town of Leighton, 231 Ala. 607, 166 So. 418; City of Mobile v. Farrell, 229 Ala. 582, 158 So. 539, 542.

In Alabama, the early case of State v. Mayor and Aldermen of Mobile, 5 Port. 279, made an exception to the general principle of the case of Attorney General v. Utica Insurance Co., supra, basing its opinion upon the theory that equity might assume jurisdiction in certain cases involving maintenance of a nuisance, quoted in part as follows:

"The jurisdiction of Courts of Equity, in affording preventive relief, in cases of public nuisances, we understand to be clearly defensible, both upon authority and principle, where the fact of nuisance is placed beyond doubt; if this fact be questionable, the aid of that Court is usually withheld; but even then it has sometimes been given by way of injunction, (to continue until a trial at law,) where its denial would be productive of great public inconvenience.

"The principle upon which Equity entertains an information to restrain the exercise of a public nuisance, (as the employment of an offensive manufacturing establishment,) or to abate it, has been already stated to be, in the first case, to prevent irreparable injury, before a Court of law could act definitively,—and in the second, to prevent a protracted and expensive litigation, which must generally be the case where there are many persons to defend."

More recently the further exception to the general rule that injunctions may not be decreed to prevent a criminal act has been asserted as "injunction will issue to protect public rights, property, or welfare notwithstanding the acts enjoined may also constitute crimes." 43 C.J.S., Injunctions, § 152, page 764, citing Farrell v. City of Mobile, 229 Ala. 294, 156 So. 635.

"Acts which are a menace to the public health or safety, or, as sometimes stated in greater detail, acts which are dangerous to human life, detrimental to public health, and the occasion of great public inconvenience and damage, may be enjoined." 43 C.J.S., Injunctions, § 124, page 671.

"Usually the purpose of granting an injunction * * * is to protect the public health or welfare". 43 C.J.S., Injunctions, § 124, page 674, citing these cases: Funk Jewelry Co. v. State ex rel. La Prade, 46 Ariz. 348, 50 P.2d 945; State ex rel La Prade v. Smith, 43 Ariz. 131, 29 P.2d 718, 92 A.L.R. 168, reheard 43 Ariz. 343, 31 P. 2d 102, 92 A.L.R. 173; Commonwealth ex rel. Attorney General v. Pollitt, 258 Ky. 489, 80 S.W.2d 543; Kentucky State Board of Dental Examiners v. Payne, 213 Ky. 382, 281 S.W. 188. The authorities are divided on this question. Comprehensive collations may be found in 40 A.L.R. 1145, et seq., and 91 A.L.R. 316, et seq. Under the exceptions to the general rule that injunction will issue to protect civil or property rights notwithstanding the acts enjoined may also constitute crimes, injunctions have issued to prevent acts in furtherance of a strike which caused great private injury, to prevent the giving or receiving of rebates, to prevent interferences with church property, to prevent maintenance of a bawdy house adjoining complainant's premises and interfering with the use and enjoyment of the latter, to prevent the maintenance of a conspiracy to commit fraudulent acts which will result in the perversion of an election, to prevent the running of a corner on the board of trade by which an exhorbitant and fictitious price is fixed on grain, which acts will result in depriving another of his property, to prevent the serving of liquor by a lodge to its members in violation of an ordinance, and to prevent the use of force and violence to prevent complainant from working land where the result would be that if the land was not planted at that time, no crop could be raised thereon during the season. 43 C.J.S., Injunctions, § 155, pages 766, 767.

The Nebraska cases of State ex rel. Spillman v. Heldt, 115 Neb. 435, 213 N.W. 578, 579, and State ex rel. Sorensen v. Knudtsen, 121 Neb. 270, 236 N.W. 696, are closely analogous to the case before us. Each of those cases was an action brought by the State on the relation of the Attorney General to restain and enjoin the defendants from interfering and preventing agents of the Department of Agriculture from entering upon defendant's premises and examining and testing his cattle for bovine tuberculosis. While the pleadings in those cases were somewhat different from the case being considered, the correctness of injunctive relief was sustained in both of them. Mr. Justice Day, speaking for the court, in the Heldt case, supra, said in part as follows:

"It is first urged by defendant that injunction is not an available remedy to the plaintiff because the state has a plain and adequate remedy at law. It is pointed out that the act of 1925, under which the plaintiff was attempting to act makes it a criminal offense, punishable by fine, for any person to interfere with or prevent the officers of the state from administering the act. It is a general rule that, where acts complained of are in violation of the criminal law, courts of equity will not, on that ground alone, interfere by injunction to prevent their commission, as they will not exercise their power for the purpose of enforcing criminal laws, but there is a well-recognized exception to the general rule, namely, that where the acts complained of constitute a nuisance and endanger the public health and welfare, and where a more complete remedy is afforded by injunction than by criminal prosecution, a court of equity may, at the instance of properly constituted authorities, afford relief by injunction.

*    *    *    *    *    *

"Under the facts disclosed by the record, we are of the view that a criminal prosecution would not afford the public as complete and adequate relief as injunction, and that the plaintiff was well within its rights in applying to equity for relief. The public health and safety were proper elements to be considered as to whether equity would take cognizance of the case. In 32 C.J. 279, § 442, the rule is stated:

" 'Where an injunction is necessary for the protection of public rights, property, or welfare, the criminality of the acts complained of does not bar the remedy by injunction.'

544

"Cases are cited in support of this view. A similar rule is laid down in 14 R.C.L. 367, § 68, and cases cited."

We apply the broad rule expressed in 43 C.J.S., Injunctions, § 152, pages 764–765 and supported by Farrell v. City of Mobile, supra, as follows:

"Where an injunction is necessary for the protection for public rights, property or welfare, the criminality of the acts complained of does not bar the remedy by injunction, and the court will consider the criminality of the act only to determine whether, under the particular circumstances, equitable intervention is necessary."

Other points mentioned in appellant's brief are not considered to be significant. The decree of the lower court is affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.