STATE of Wyoming ex rel. W. T. KIRK,
State Commissioner of Agriculture,
Appellant (Plaintiff below),

v.

Coy GAIL, Appellee (Defendant below).
No. 3083.

Supreme Court of Wyoming.
Aug. 13, 1962.

Norman B. Gray, Atty. Gen., W. M. Haight, Deputy Atty. Gen., Cheyenne, for appellant.

J. D. Fitzstephens of Goppert & Fitzstephens, Cody, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

This case concerns an attempt by the Wyoming Commissioner of Agriculture to prevent by injunction the continued sale of milk by the defendant, Coy Gail, allegedly in violation of § 35–290, W.S.1957. That section requires any person who shall operate any dairy or other establishment for the handling or distributing of dairy products to secure a license from the state department of agriculture. A proviso in the statute specifies that it shall not apply to "farmers who sell their dairy products to a processing plant." Persons who violate the section are declared, by § 35–297, W.S. 1957, to be guilty of a misdemeanor.

The parties stipulated at the time of trial on August 15, 1961, that Gail was then engaged in selling milk to consumers; that he had no license from the state department of agriculture; that he also had sold dairy products to processors; that a criminal case charging Gail with violation of § 35–290 was tried in the Justice of the Peace Court of James L. Simonton of Cody, on May 2, 1961, before a jury; and that the jury returned a verdict of not guilty.

It is not made clear to us when or to whom the defendant was charged with

selling milk, in the justice of the peace case. We can only assume that insufficient evidence was presented by the state to satisfy the jury of defendant's guilt beyond a reasonable doubt, as far as the particular violation then charged was concerned. But notwithstanding his acquittal on May 2, 1961, as to the violation then charged, the defendant in the instant case stands guilty by his own stipulation and confession of a clear violation of § 35–290, as of August 15, 1961.

This situation led the trial judge to announce, "I am not countenancing this. I think there is a bare-faced violation of a criminal law." He held nevertheless that an injunction was not proper and declined to enjoin the violation. From his refusal to issue an injunction, the commissioner has appealed.

Gail's attorney insists that his client is not guilty of a violation of § 35–290 because he sells part of his dairy products to a processing plant, notwithstanding the fact that he also sells part of such products directly to consumers. We cannot countenance such an interpretation of this section any more than the trial court was able to do so. If the legislature had intended to exempt persons who sell a part only of their dairy products to processing plants while selling the rest to consumers, it could have used words expressing that intent.

By exempting farmers who sell "their" dairy products to a processing plant, the legislature clearly granted an exemption to farmers only insofar as their dairy products are sold to a processing plant. The exemption was not made to apply to farmers who sell "part of" their dairy products to a processing plant and part to consumers, and no farmer can claim an exemption as to dairy products which are sold to consumers and not to a processing plant.

The interpretation advocated by Gail's attorney not only puts words into the statute which are not there, but it would defeat the very purpose of the statute itself. That purpose is to require a license from and regulation by the depart- ment of agriculture in every case where a producer sells dairy products directly to the public or to consumers. A fundamental rule in the interpretation of statutes is that the construction adopted should not be such as to nullify, destroy or defeat the intention of the legislature. 50 Am.Jur., Statutes, § 223, pp. 202–203.

Although counsel on both sides of the case at bar cite a wide range of authority, they seem to agree that, in the absence of statutory provisions therefor, the general rule is that an injunction will not issue to restrain and prohibit acts punishable by criminal laws unless property rights are involved, or unless the acts complained of constitute a nuisance and endanger the public health and welfare. See Knight v. City of Riverton, 71 Wyo. 459, 259 P.2d 748, 752; Eckdahl v. Hurwitz, 56 Wyo. 19, 103 P.2d 161, 163; Takiguchi v. State, 47 Ariz. 302, 55 P.2d 802, 803; and Annotation, 91 A.L.R. 315, 320.

Counsel for the state admit the absence of statutory authority for an injunction in such a case as the one at hand. They claim, however, that Gail's violation of § 35–290 constitutes a nuisance and endangers the health and welfare of the public. This contention is based upon the uncontradicted testimony of Michael Purko, state chemist and director of the state's chemical and bacteriological laboratories.

As we read the transcript of testimony, the essence of what Purko testified was that raw milk has been known to transmit four classical diseases, tuberculosis, brucellosis, septic sore throat and scarlet fever; that when a person is licensed he is registered with the department of agriculture and his milk is tested periodically; and that when a person is not licensed he is not registered and the department does not receive samples from a nonlicensed processer (sic) [producer].

We fail to find any evidence indicating whether the milk sold by Gail was raw or pasteurized, and no attempt was made by the state to show that any of his milk was in fact contaminated or that it contained

bacteria. Counsel for the commissioner contend that state chemist Purko, an expert on the subject, expressed an opinion to the effect that the fact that Gail had no license might or could endanger the health of the public, and that this opinion constituted proof that the acts complained of do endanger the public health.

As we read the transcript of trial proceedings, the trial court took the position that the question being asked the witness in this connection was one "that lies in the laps of the Court." Persistent objections were made to this line of questioning, and we fail to find an affirmative answer. There were affirmative answers to questions which the court considered preliminary and expressions to the effect that the witness "has an opinion."

■ But we need not belabor the point, for neither an expert nor nonexpert witness may give his opinion on an ultimate issue in a case, and if he does, it should be disregarded. Macy v. Billings, 74 Wyo. 404, 289 P.2d 422, 424; Wawryszyn v. Illinois Central Railroad Company, 10 Ill. App.2d 394, 135 N.E.2d 154, 61 A.L.R.2d 801, 807; The Domira, D.C.N.Y., 49 F.2d 324, 328, affirmed, 2d Cir., 56 F.2d 585; 32 C.J.S. Evidence § 446, p. 75. In DeGroot v. Winter, 261 Mich. 660, 247 N.W. 69, it was held that expert opinion testimony that a certain factor "did" rather than "could" occasion a certain result is incompetent as invading the province of the jury.

We cannot escape notice of the fact that the law which Gail is alleged to have violated in this action pertains only to the obtaining of a license. It has nothing directly to do with the health or welfare of the public. It was enacted in 1947 and amended in 1955. On the other hand, the law having to do with the sale of milk from diseased animals and the sale of milk which contains sediment or dirt or filth of any kind was enacted in 1921. That law is now contained in §§ 35–279 to 35–288, W.S.1957. Section 35–288 provides that any person violating any of the provisions of that law (the 1921 law) shall be guilty of a misdemeanor.

Undoubtedly, if Gail is selling unsafe milk or milk which affects the public health, he should be dealt with under the laws having to do with the selling of such milk, and there would in that case be more reason for a court of equity to interfere than there would be where he is charged only with not having a proper license.

There is a conflict of authority with reference to the jurisdiction of an equity court, in the absence of statute, to entertain a suit for an injunction to prevent the conduct of a business without a license, but usually the matter of jurisdiction is determined in the light of fundamental principles of equity. Annotation, 81 A.L.R. 292, 293; 28 Am.Jur., Injunctions, § 165, p. 666; 43 C.J.S. Injunctions § 124, p. 671.

It is frequently stated that where the acts complained of constitute a nuisance and endanger the public health and welfare, and where a more complete remedy is afforded by injunction than by criminal prosecution, a court of equity "may," at the instance of properly constituted authorities, afford relief by injunction. Corte v. State, 259 Ala. 536, 67 So.2d 782, 787; State ex rel. La Prade v. Smith, 43 Ariz. 131, 29 P.2d 718, 721, 92 A.L.R. 168, modified, 43 Ariz. 343, 31 P.2d 102, 92 A.L.R. 168; State Board of Milk Control v. Newark Milk Co., 118 N.J.Eq. 504, 179 A. 116, 121; Annotation, 91 A.L.R. 315, 320.

However, it is for the trial court, in the exercise of its sound discretion, to decide whether the injunction should be allowed or denied, and the granting of an injunction cannot be said to be mandatory in all cases. It is commonly held that it is within the sound discretion of the court to determine (1) whether as a court of equity it will exercise its jurisdiction, and (2) the propriety of affording equitable relief, such discretion to be exercised according to the circumstances and exigencies of each particular case. Corte v. State, supra, at 67 So.2d 787–788; Walling v. Clinchfield Coal Corporation, D.C.Va., 64 F.Supp. 347, affirmed, 4 Cir., 159 F.2d 395; 30 C.J.S.

**958**

Equity § 10, pp. 328–329; 19 Am.Jur., Equity, § 19, p. 49.

■ It was therefore within the province of the trial court in this case to determine whether the sale of milk by Gail without a license constituted such a nuisance and so endangered the health of the public as to require the issuance of an injunction. It was also within the province of the trial court to determine whether the right of criminal prosecution is an adequate remedy for dealing with Gail's violation of § 35–290. We are given no reason to believe that the trial court acted arbitrarily or that it did not exercise its discretion in accordance with fixed principles and precedents of equity jurisprudence. See 30 C. J.S., supra, p. 329. Consequently, we find no reason to disturb its conclusions.

This is especially true in the case before us in view of the state of the evidence. As we have already pointed out, the evidence fails to show whether Gail was selling raw or pasteurized milk. It also showed only that the acts complained of "could" affect the public health, with no showing that such acts "do" in fact affect the public health.

With respect to the right of the trial court to consider a criminal prosecution as an adequate remedy, we must emphasize that the legislature has in this instance failed to provide for injunctive relief or for any method of enforcement except criminal prosecution. Ordinarily, when a criminal prosecution will constitute an effectual protection against the acts complained of, no grounds exist for relief by injunction, and the facts found by the trial court in that regard, if fairly made, are controlling on appeal. Eckdahl v. Hurwitz, 56 Wyo. 19, 103 P.2d 161, 162 and 163.

We have no way of knowing whether there was a violation of the licensing act prior to May 2, 1961, except that a justice of the peace jury failed to convict at that time. As previously mentioned, however, the stipulation made by Gail, at the time of trial in this case, amounts to a confession that he was in violation as of August 15, 1961, since Gail cannot claim an exemption

with respect to milk which he sells to consumers. If the violation continues, we have no doubt that the proper officers will see that the law is enforced.

Affirmed.